## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## NORFOLK & WESTERN R. CO. V. AMPEY.

### APRIL 23, 1896.

1. PLEADING—*Duplicity—Special Demurrer.*—Duplicity in a declaration relates to the form and not to the substance, and hence can be taken advantage of only by *special demurrer*. But special demurrers have been abolished in Virginia, and, consequently, mere duplicity in a count of a declaration is no longer a ground of demurrer. Facts, however, which together constitute but one connected proposition or entire point, do not operate to render a pleading double.

2. PLEADING— *Venire— Transitory Actions— Personal Injuries— Plea in Abatement.*—Actions for personal injuries are transitory, and it is unnecessary to set forth in the declaration the place at which the act was done which caused the injury. That the cause of action arose, or the matter is within the jurisdiction of the court, need not be averred in the declaration. In such actions objections to the jurisdiction of the court must be raised by a plea in abatement, and not by a demurrer.

3. BILL OF EXCEPTIONS— *What to Contain— Waiver or Abandonment of Objections Noted—Two or More Points in One Bill.*—Objections to the admission or exclusion of evidence, or to giving or refusing to give instructions, should be brought directly to the attention of the trial court, and, if overruled, a proper bill of exceptions should be taken specifically and definitely setting forth the allegation of error and so much of the evidence as is necessary to render clear the propriety or impropriety of the ruling of the trial court; otherwise the exception, though noted at the time, will be treated, by the appellate court, as waived or abandoned. Several exceptions may be saved in the same bill, provided these requisites are complied with, but it tends to produce confusion, and the practice is not to be commended.

4. EVIDENCE—*Motion to Exclude after being Received without Objection.*— A party who asks to have evidence excluded, which has been admitted without objection, must recall and point out distinctly the objectionable answers or statements, or the court may properly overrule the motion to exclude.

5. Master and Servant—*Negligence—Safe Machinery—Inspection and Repair of Machinery—Personal Duty of Master.*—It is the duty of the master to use ordinary care and diligence to provide safe and sound machinery, materials, and instruments for the use of the servant, and such appliances as are reasonably calculated to insure his safety. He is equally bound to inspect and examine them from time to time, and to use ordinary care and skill to discover and repair defects. If the master knows, or by the use of ordinary care would have known, of defects in such machinery, instruments, and appliances, in consequence of which the servant is injured, the master is liable. This is one of the personal duties of the master from the neglect of which he cannot escape liability by delegating it to another.

6. Master and Servant—*Personal duty of Master—Safe Machinery—Fellow-servants.*—If a servant is injured through the fault of the master to perform any duty which the law imposes on him personally, such as providing, inspecting, and keeping in good order safe and suitable machinery, and such fault proximately contributed to the injury, it is no defence for the master that the negligence of a fellow-servant also contributed to produce the injury. The master is liable as though he only was at fault.

7. Master and Servant—*Safe Machinery—When Conductor not a Fellow-Servant of Brakeman—Proximate Cause—Case at Bar.*—The duty of providing safe machinery and appliances, and of keeping the same in proper repair, is the personal duty of the master, and where, under the rules of a railroad company, the duty of seeing that the couplings and brakes of the cars of his train are in good order before starting, and of inspecting them when his train stops for water or other trains, is delegated to a conductor of a freight train while his train is between terminal points, and the brakemen of such train are placed under the direction of such conductor, the conductor is not, in the matter of inspecting and seeing that the couplings and brakes of the cars of his train are in good order, a fellow-servant with said brakeman; and if one of such brakemen, in pursuance of orders of said conductor, between terminal points, attempts to couple cars which have been in a wreck, and thereby had the deadblocks crushed and the draw-heads twisted, and in such attempt sustains injury, the company is liable therefor. But whether fellow-servant or not, under the facts of the case at bar, the proximate cause of the injury was the defective condition of the machinery, and the company is liable.

8. Master and Servant—*Dangerous Machinery—When Servant justified in Using, and what Care Required.*—Where a servant, in obedience to the requirement of the master, incurs the risks of machinery which is dangerous, but it is reasonably probable that danger may be avoided, if extraordinary care and skill be used, and the servants uses such

care and skill as the exigencies of the situation seem reasonably to demand, and yet injury results, the master is liable. The servant is only required to do that which a man of ordinary prudence would have done under like circumstances.

9. RAILROADS—*"Competent" or " efficient " men.*—It is the duty of a railroad company to provide competent men for its service. But it is not error to substitute in an instruction the word "efficient" for the word " competent " when the relation in which it is used makes the two words equivalent.

10. PERSONAL INJURIES—*Measure of Damages—Excessive Verdicts.*—There is no legal measure of damages for personal injuries, and the verdict of a jury will not be set aside as excessive unless the amount is so large as to evince prejudice, partiality, or corruption on the part of the jury, or that they were misled by some mistaken view of the merits of the case.

Error to a judgment of the Corporation Court of the city of Petersburg, rendered February 2, 1894, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The plaintiff sued for an injury inflicted on him, as he alleged, by the negligence of the defendant, whereby he sustained the loss of his right hand. There was a verdict and judgment in favor of the plaintiff for $3,500. The evidence sufficiently appears in the opinion of the court. There was but one bill of exceptions filed in the case. This bill not only contained the stenographer's report of the evidence, with exceptions noted to the rulings of the court on the admission or exclusion of evidence, but also all of the instructions offered by the plaintiff and the defendant respectively, the ruling of the court thereon, and the instructions given by the court, noting exceptions thereto by both plaintiff and defendant. It also contained the verdict of the jury, the motion to set it aside, and the reasons therefor, and the action of the court refusing to set aside the verdict.

The bill of exceptions begins as follows:

"Be it remembered that, after the jury were sworn to try the issue in this case, the plaintiff and the defendant, to maintain said issue on their respective parts, respectively introduced sundry witnesses, and also certain documentary evidence. The testimony of said witnesses as the same was given to the jury was taken down by M. B. Cogbill, a stenographer, and said Cogbill's type-written copy thereof, showing all the questions propounded to the witnesses and their respective answers thereto, and showing also all of the documentary evidence aforesaid offered by the parties, together with all objections and motions made by the parties, the rulings of the court thereon, and the exceptions of the parties to such rulings, as the same were made or taken during the progress of the trial, marked ' M. B. C.' is on file with the papers in the case, and it is agreed by the parties correctly sets forth all of the evidence so offered or laid before the jury in this case, and also correctly sets forth all of the said objections, motions, rulings of the court, and exceptions during the trial of the case, from the swearing of the jury to the conclusion of the evidence introduced before it, and also correctly sets forth the several days on which said testimony was taken, and that by consent of parties, the jury were taken to view the place where the accident, which is the subject of controversy between the parties, happened. Said copy of said evidence showing the same, and all of the proceedings aforesaid, is in words and figures as follows, to-wit:"

The following are the instructions offered by the plaintiff and the defendant respectively, and the rulings of the court thereon, and the instructions give by the court, and the objections thereto by the plaintiff and defendant respectively:

*" Instructions Offered by the Plaintiff."*

The court instructs the jury as follows:

" The duty of railroad companies is to use all reasonable care to provide and maintain safe, sound, and suitable road-way, structures, instrumentalities, machinery, and appliances, competent and vigilant agents, and not to expose their employees to risks beyond those incident to the employment, and such as were in contemplation at the time of the contract of service, and the employee has the right to presume these duties have been performed; and for injuries to employees resulting from a breach of this duty, or from other negligence, those companies are liable to damages.

" 1. If the jury believe from the evidence that the conductor, R. J. Jones, was responsible for the safety, prompt move-movement, and proper care of his train, for the conduct of the men employed thereon, and for signals, lamps, and tools entrusted to his care, that it was his duty to see that the couplings and brakes on his train were in good order before starting, and inspect them when the train stops for water or for other trains; and that the plaintiff, Infant Ampey, was at the time of his injury under the direction of the said conductor, R. J. Jones, then the said conductor, R. J. Jones, was not a fellow-servant with the said plaintiff, Infant Ampey, but, on the contrary, stood in the place of the railroad company itself.

"And if they shall further believe from the evidence that the injury to the plaintiff, Infant Ampey, was caused by the negligence of the said conductor, R. J. Jones, as charged in the declaration, then the negligence of the said conductor, R. J. Jones, was the negligence of the Norfolk and Western Railroad Company, and the jury must find for the plaintiff.

" 2. If the jury believe from the evidence that at the time of the injury to the plaintiff, Infant Ampey, there was trouble with the coupling which the said plaintiff was attempt-

ing to make, and that Conductor R. J. Jones knew the fact, and that said conductor ordered him to make the coupling with his hand and was told by the plaintiff that he would do so, but that he, the said conductor, must have the train come back very light, that the conductor instead of signalling the engineman to come back gently, gave the signal to come in the usual way when couplings are to be made, and that said injury occurred in consequence of his, the said conductor's, giving the signal as he did, and not in giving a signal to come back gently, they must find a verdict for the plaintiff.

" 3.*

" 4. If the jury believe from the evidence that at the time of the injury to the plaintiff he was ordered by the conductor, R. J. Jones, to couple to his train a car having a defective coupling which, though dangerous to make, it was reasonably probable might be made with extraordinary caution or skill, and the plaintiff did so make said coupling, and in doing so was injured, then the said Ampey was not guilty of contributory negligence, and they must find for the plaintiff.

" 5. If the jury shall believe from the evidence that at the time the plaintiff was injured he was ordered by Conductor R. J. Jones to couple cars having defective couplings, and it was reasonably probable that by the use of extraordinary skill and caution the said plaintiff could make said couplings without injury to himself by using his hand for that purpose, and did so make said coupling, and was thereby injured, such act does not constitute contributory negligence, though the jury shall believe that the said Ampey was acquainted with the rule of the defendant company requiring brakemen to use sticks in making said couplings, and they must find for the plaintiff.

---

* The third instruction, probably through some mistake in preparing the record, is identical with the second instruction, and is therefore omitted.

" 6. If the jury believe from the evidence that the defendant company exposed the plaintiff, Infant Ampey, to perils outside the ordinary risks incident to his contract of service, and attempted to run its train on which the plaintiff was employed as brakeman with an insufficient number of trainhands, whereby the occasion arose which contributed to produce, if it did not directly cause, the injury to the plaintiff, then the defendant is liable to damages, and the jury must find for the plaintiff, unless they shall further believe from the evidence that the plaintiff was guilty of contributory negligence.

" 7. If the jury believe from the evidence that Conductor R. J. Jones had general charge and control of the trainmen, assigning them to such duties as he thought proper, and general control over the coupling and make up of his trains, and that the injury to the plaintiff, Infant Ampey, was caused by any negligence in the management or making up of his train, the company is liable therefor, and they must find for the plaintiff.

" 8. If the jury shall find for the plaintiff, they may, in estimating the damages, take into consideration his physical and mental suffering arising from said injury, his loss of wages for the time he was prevented by said injuries from working, and proper compensation for his being deprived by the said injuries from following such calling or business as he could have followed but for said injury."

To the giving of all these instructions, the eighth instruction excepted, the defendant, by its attorney, objected, and offered, and moved the court to give the following eight instructions:

*Instructions Offered by the Defendant.*

The court instructs the jury as follows:

" 1. When the plaintiff entered the service of the defendant company the law presumes that he contracted with

reference to the risks and hazards incident to the business of his employment as the company conducted it, and that his compensation was adjusted accordingly.

"2. If the jury believe from the evidence that, when the plaintiff undertook the coupling in making which he was injured, there were defects in the coupling apparatus of either or of both of the cars to be coupled, that these defects were open, or obvious, or known to him, that he still went on and made said coupling, and in doing so was injured, then he is not entitled to recover in this action, and the jury must find for the defendant.

"3. If the jury believe from the evidence that the accident to the plaintiff was caused by the negligence of the engineer in so handling his engine as that the cars to be coupled came together with too much speed or violence, then such negligence was the negligence of a fellow-servant, for which the company is not liable, and the jury must find for the defendant.

"4. If the jury believe from the evidence that, at the time of the injury to the plaintiff, there was in force a rule of the company, known to him, that required a brakeman to use a coupling stick in coupling cars, that the plaintiff had such stick, but in disregard of such rule, made with his hand, instead of such stick, the coupling by which he was injured, and that, if he had used a coupling stick instead of his hand, he would not have been injured, he was the author of his own misfortune, and the jury must find for the defendant.

"5. The plaintiff cannot recover unless the defendant was negligent at the time and place of the accident, and such negligence must have been the proximate or direct cause of the accident. The number of hands employed on the train between Suffolk and Petersburg, and when taking up cars at Petersburg, cannot be considered by the jury in reaching their verdict, unless they believe from the evidence that the

injury complained of was caused by the defendant not having at or near the place of coupling a sufficient number of men to give the necessary signals to the engineer.

"6. Although the jury may believe from the evidence that, if the fireman had not been sick, and front brakeman, Greenhill, had not been doing the fireman's duty, he, Greenhill, would have made the coupling that the plaintiff made when injured, and accordingly that the plaintiff would not have been injured, the plaintiff cannot recover, unless the jury also believe from the evidence—*first*, that the defendant was at fault in having the front brakeman doing the fireman's duty; *secondly*, that the presence of Greenhill at his place of duty as brakeman was necessary to enable the plaintiff to make the proper signals to the engineer, and to safely make the coupling, and, *thirdly*, that the plaintiff himself was without fault when he made the coupling.

"7. Although the jury may believe from the evidence that the defendant was negligent, and that such negligence caused the accident of which the plaintiff complains, yet, if they also believe from the evidence that the plaintiff was negligent, and that such negligence contributed in the slightest degree to the accident, and that but for such negligence of the plaintiff the accident would not have happened, they must find for the defendant.

"8. The court instructs the jury that the burden of the proof is on the plaintiff, except on the question of contributory negligence, and to be entitled to succeed in this case the plaintiff must prove by a preponderance of evidence, and to the satisfaction of the jury every fact essential to his recovery. In making out a case of contributory negligence the burden of proof is on the defendant. The jury are the judges of the weight of the evidence and the credibility of the witnesses."

To the giving of all the instructions so offered by the defendant the plaintiff excepted.

And thereupon the court, after hearing the arguments of attorneys, rejecting certain of the instructions so offered by the plaintiff, and modifying, by certain amendments, certain others so offered by the plaintiff, and also modifying, by certain amendments, certain of the instructions so offered by the defendant, instructed the jury as follows:

*Instructions Given by the Court.*

The court instructs the jury as follows:

" 1. The duty of railroad companies is to use all reasonable care to provide and maintain safe, sound, and suitable roadway, structures, instrumentalities, machinery, and appliances, competent and vigilant agents, and not to expose their employees to risks beyond those incident to the employment, and such as were in contemplation at the time of the contract of service, and the employee has the right to presume these duties have been performed; and for injuries to employees resulting from a breach of this duty, those companies are liable in damages.

" 2. If the jury believe from the evidence that the conductor, R. J. Jones, was responsible for the safety, prompt movement, and proper care of his train, for the conduct of the men employed thereon, and for signals, lamps, and tools entrusted to his care, that it was his duty to see that the couplings and brakes on his train were in good order before starting, and inspect them when the train stops for water or for other trains; and that the plaintiff, Infant Ampey, was at the time of his injury under the directions of the said conductor, R. J. Jones, then the said conductor, R. J. Jones, was not a fellow-servant with the said plaintiff, Infant Ampey, but, on the contrary, stood in the place of the railroad company itself.

" And if they shall further believe from the evidence that the injury to the plaintiff, Infant Ampey, was caused by the

negligence of the said conductor, R. J. Jones, as charged in the declaration, then the negligence of the said conductor, R. J. Jones, was the negligence of the Norfolk and Western Railroad Company, and the jury must find for the plaintiff, unless the plaintiff was also guilty of negligence which contributed to his injury.

" 3. If the jury believe from the evidence that at the time of the injury to the plaintiff, Infant Ampey, there was trouble with the couplings which the said plaintiff was attempting to make, and that Conductor R. J. Jones knew the fact, and that said conductor ordered him to make the coupling with his hand and was told by the plaintiff that he would do so, but that he, the said conductor, must have the train come back ' very light'; that the conductor, instead of signalling the engineman to come back gently, gave the signal to come in the usual way when couplings are to be made, and that the said injury occurred in consequence of his, the said conductor's, giving the signal as he did, and not in giving the signal to come back gently, they must find a verdict for the plaintiff.

" 4. If the jury shall find for the plaintiff, they may, in estimating the damages, take into consideration his physical and mental suffering arising from said injury, his loss of wages from the time he was prevented by said injuries from working, and proper compensation for his being deprived by the said injuries from following such calling or business as he could have followed but for said injury.

" 5. When the plaintiff entered the service of the defendant company the law presumes that he contracted with reference to the risks and hazards incident to the business of his employment as the company conducted it at the time he entered it, and that his compensation was adjusted accordingly.

" 6. If the jury believe from the evidence that [*when*] the plaintiff undertook the coupling, in making which he was

injured, there were defects in the coupling apparatus of either or both of the cars to be coupled; that these defects were open and obvious, or known to him, and were such as to make the coupling unusually dangerous; that he still went on and made said coupling, and in doing so was injured, then he is not entitled to recover in this action, and the jury must find for the defendant; unless the jury further find from the evidence that the conductor, after being informed of such unusual danger, directed him to make the coupling under the promise, expressed or implied, that he would use or have used extraordinary care in assisting to make the coupling.

" 7. If the jury believe from the evidence that the accident to the plaintiff was caused solely and proximately by the negligence of the engineer in so handling his engine as that the cars to be coupled came together with too much speed or violence, then such negligence was the negligence of a fellow-servant, for which the company is not liable, and the jury must find for the defendant.

" 8. If the jury believe from the evidence that, at the time of the injury to the plaintiff, there was in force a rule of the company, known to him, that required a brakeman to use a coupling stick in coupling cars; that the plaintiff had such stick, but in disregard of such rule and without special direction so to do he made with his hand instead of such stick the coupling by which he was injured, and that if he had used a coupling stick instead of his hand, he would not have been injured, he was the author of his own misfortune, and the jury must find for the defendant.

" 9. The plaintiff cannot recover unless the defendant was negligent at the time and place of the accident, and such negligence must have been the proximate and direct cause of the accident. The number of hands employed on the train between Suffolk and Petersburg, and when taking up cars at Petersburg, cannot be considered by the jury, in

reaching their verdict, unless they believe from the evidence that the injury complained of was caused by the defendant not having at or near the place of coupling a sufficient number of efficient men to give the necessary signals to the engineer and make the coupling in question.

" 10. Although the jury may believe from the evidence, that if the fireman had not been sick, and front brakeman, Greenhill had not been doing the fireman's duty, he, Greenhill, would have made the coupling the plaintiff made when injured, and accordingly that the plaintiff would not have been injured, the plaintiff cannot recover, unless the jury also believe from the evidence—*first*, that the defendant was at fault in having the first brakemen doing the fireman's duty; *secondly*, that the presence of Greenhill at his place of duty as brakeman was necessary to enable the plaintiff to make the proper signals to the engineer, and to safely make the coupling; and *thirdly*, that the plaintiff himself was without fault when he made the coupling.

" 11. Although the jury may believe from the evidence that the defendant was negligent, and that such negligence caused the accident of which the plaintiff complains, yet, if they also believe from the evidence that the plaintiff was negligent, and that such negligence contributed in the slightest degree to the accident, and that but for such negligence of the plaintiff the accident would not have happened, they must find for the defendant.

" 12. The court instructs the jury that the burden of proof is on the plaintiff, except on the question of contributory negligence, and to be entitled to succeed in this case the plaintiff must prove by a preponderance of evidence, and to the satisfaction of the jury, every fact essential to his recovery. In making out a case of contributory negligence the burden of proof is on the defendant. The jury are the judges of the weight of the evidence and the credibility of the witnesses."

To the opinion of the court rejecting the fourth, fifth, sixth and seventh instructions offered by the plaintiff, and modifying the first and second instructions offered by him, and to its giving all of the instructions given by the court (the fourth, tenth, eleventh and twelfth instructions given by the court, excepted) the plaintiff excepted ; and to the opinion of the court modifying the first, second, third, fourth and fifth instructions offered by the defendant, and to the giving of all of the instructions given by the court (the fourth, tenth, eleventh and twelfth, excepted), the defendant excepted.

*Geo. S. Bernard* and *Wm. H. Mann*, for the plaintiff in error.

*Wm. B. McIlwaine* and *G. S. Wing*, for the defendant in error.

RIELY, J., delivered the opinion of the court.

The declaration contains three counts. The defendant demurred to the whole declaration and also to each count thereof, in which demurrers the plaintiff joined. The Corporation Court overruled the demurrers; and this action of the court constitutes the first assignment of error.

The main objection to the declaration relates to the first count ; and the foundation of the objection is that this count alleges three distinct grounds of negligence as the cause of the injury sustained by the plaintiff, either of which would of itself, independently of the others, constitute a sufficient ground for the action. In other words, the claim is that the count is bad for duplicity. The grounds so stated are, the negligence of the defendant in failing to exercise due care in selecting competent servants, in failing to provide a sufficient number of train hands, and in failing

to supply and maintain suitable and safe machinery and in-strumentalities for the conduct of the business of the de-fendant. They are conjunctively alleged as concurrent causes which, co-operating together, produced the injury. It is very questionable whether this constitutes duplicity. It is stated by eminent text-writers on the subject of plead-ing that no matters, however multifarious, will operate to make a pleading double that together, constitute but one connected proposition, or entire point. Stephen on Plead. 232–3, 263 ; 4 Minor's Insts., Pt. 2, p. 937, and *Va. F. & M. I. Co.* v. *Saunders*, 86 Va. 969. But even if this count was obnoxious to the charge of duplicity, the fault could not be taken advantage of on a general demurrer. The objection for duplicity relates to matter of *form* only, and does not go to the substance of the pleading. Being an objection to the form and not to the substance of the declaration, it could only be availed of, even at common law, with all of its rigid rules of pleading, by special demurrer. The party demurring was required to lay his finger upon the very point. Chitty on Pl. 655, 662; 4 Minor's Institutes, Pt. 2, 939; 5 Rob. Pr. 305; *Smith* v. *Clench*, 2 Ad. & Ellis, N. S. 836; *Fairfax* v. *Lewis's Adm'r*, 11 Leigh 243; *Kennaird* v. *Jones*, 9. Gratt. 189; *Cunningham* v. *Smith*, 10 Gratt. 257; *Smith's Adm'r* v. *Lloyd's Ex.*, 16 Gratt. 310, 313; *Grayson* v. *Buchanan*, 88 Va. 251; and *King* v. *Howard*, 1 Cush. 141.

Where special demurrers have been abolished, duplicity in pleading cannot now be reached by a demurrer. 5 Rob. Pr. 305; 3 Id. 509; *King* v. *Howard*, 1 Cush. 141; *Coyle* v. *B. & O. R. R. Co.*, 11 W. Va. 107; and *Sweeney* v. *Baker*, 13 W. Va. 200.

Section 3272 of the Code is as follows:

" On a demurrer (unless it be to a plea in abatement), the court shall not regard any defect or imperfection in the declaration or pleadings, whether it has been heretofore deemed mispleading or insufficient plead-ings or not, unless there be omitted something so essential to the action or defence, that judgment, according to the law and the very right of the cause, cannot be given.   *   *   *   *   *"

This language was incorporated into the Code at the revisal of 1849 upon the suggestion of the Revisors, who, in reporting it to the Legislature, appended the following note:

" This section is so framed as to prevent a demurrer being sustained to any pleading for such matters of form as heretofore were required to be specially alleged as causes of demurrer, and which, if so alleged, were available; its effect is to abolish special demurrers." Report of Revisors, 849, and 3 Rob. Pr. 509.

It was held by this court in *Smith's Adm'r* v. *Lloyd's Ex.*, *supra*, 310 and 313, that the effect of this statute was to abolish special demurrers. Consequently, mere duplicity in a count in a declaration is no longer with us a good ground of demurrer.

Neither in the petition for the writ of error, nor in the brief of counsel for the plaintiff in error, is any ground relied on in support of the demurrer to the second count. An inspection of it discloses no defect, and none exists.

The objection to the third count is that it does not set forth a cause of action in the city of Petersburg. Even if the allegation of *place* were necessary, the objection is not well founded, for it is expressly averred at the beginning of the count that it was *at the city of Petersburg* that the coupling, in effecting which the injury was alleged to have been sustained, was required to be made. But this is a transitory action, and it was unnecessary to set forth in the declaration the place at which the act which caused the injury was done. Code, sec. 3243; 4 Minor's Institutes, Pt. 1, 574–575, 590; Id., Pt. 2, 955–56; and 3 Rob. Pr., (New) 503–505. If the objection was aimed at the jurisdiction of the court, then this was the province of a plea in abatement to the jurisdiction, and not of a demurrer. Code, sec. 3260. It is unnecessary to aver in the declaration that the cause of action arose, or that the matter is within the jurisdiction of the court. Sec. 3244.

The next assignment of error relates to the refusal of the court to exclude from the consideration of the jury certain

parts of the testimony given by the plaintiff himself upon the trial.

It is sought to raise the question upon the bill of exceptions taken to the refusal of the court to set aside the verdict and award a new trial, which sets forth all of the evidence given upon the trial, together with the objections to the evidence and rulings of the court as they were noted during the progress of the trial, and much other matter. It is simply a stenographic report of all that transpired, signed by the judge, and fails to comply, so far as the alleged errors under consideration are concerned, with the familiar and well-established practice in respect to bills of exceptions. Where a ruling of the trial court is relied on as erroneous, and it is intended to make it, if not remedied, the basis of an application to an appellate court for a writ of error, particularly where it relates to the admission or exclusion of evidence, or to an instruction, it should be directly brought to the attention of the trial court, and if not corrected by appropriate action, it should then be specified in a proper bill of exceptions, unincumbered by irrelevant matter, and signed by the judge of the court. And while it is permissible to embrace in the same bill more than one exception, it tends to produce confusion, and the practice is not to be commended; but, if adopted, the bill of exceptions should, as in the case of a single exception, specifically and definitely set forth the allegation of error and so much of the evidence as is necessary to render clear the propriety or impropriety of the rulings of the court which were excepted to. Where a bill of exceptions is not taken in accordance with the established practice, the objections made to rulings of the court in respect to the admission or exclusion of evidence, although noted at the time, are to be treated by the appellate tribunal as waived or abandoned. In the case of *N. & W. R. Co. v. Shott*, 92 Va 34, Judge Harrison, in delivering the opinion of the court, said:

"In the case at bar, the bill of exceptions under consideration is a single bill of exceptions, setting forth all the evidence introduced on the trial, taken to the refusal of the court to set aside the verdict and grant a new trial.   It does not conform to the rule of practice already laid down, and therefore the numerous objections made to the admission and rejection of evidence at the time it was taken must be regarded by this court as abandoned."

The bill of exceptions in this case does not differ from the bill in that in respect to the question under consideration, and the like conclusion must follow.   With these observations on the nature of the bill of exceptions upon which this assignment of error is founded, we could properly dismiss its further consideration, but we will briefly examine the three objections in respect to the evidence which the plaintiff in error has chosen to select out of the many rulings made by the court.

The first objection is to the refusal of the court to exclude so much of the testimony of the plaintiff as undertook to state what were the rules and regulations of the company in reference to the employment of its servants; and the third objection is to the refusal of the court to exclude so much of each and every question asked the witness as called for, and so much of every answer as gave the opinion or belief of the witness " as to any matter in issue in the case "; all of which questions had been asked and the answers to them been given by the witness without objection from the defendant. The motion to exclude did not specify the particular statements or answers that were deemed objectionable by the defendant.   The effect of the motion was to impose a burden on the court that it was not called upon to bear.   It could not be expected to explore all of the testimony of the witness and ascertain and winnow out the exceptionable parts of it, when the defendant had not seen proper to object to its admission, and, after it had been given, did not take the pains

to specify particularly what it asked to have excluded.  A party who asks to have evidence excluded that has been admitted without objection, must recall and point out distinctly the objectionable answers or statements, or the court may properly overrule the motion to exclude.  *Harriman* v. *Brown*, 8 Leigh 697; *Buster's Ex'or* v. *Wallace*, 4. H. & M. 82; *Parsons* v. *Harper*, 16 Gratt. 64; *Friend* v. *Wilkinson & Hunt*, 9 Gratt. 31; and *Trogden's Case*, 31 Gratt. 862.

The only other objection relied upon, under this assignment of error, relates to the question which called for the language used by the conductor to the plaintiff whenever couplings had to be made by him on the trip out from Norfolk, as well as at the coupling attempted at Petersburg, where he was injured, and the anwer given in reply to the question.  No objection to this evidence was pointed out except the general one, that it was impertinent and illegal, without specifying wherein it was impertinent and illegal. The object of the question and the effect of the answer was to show the incompetency of the conductor, and related directly to one of the principal allegations of the first count of the declaration.  The evidence was relevant to the issue, and the court did not err in admitting it over the objection of the defendant.

The next assignment of error relates to the action of the court in giving certain instructions and refusing others.

The first instruction given by the court announced the proposition that it was the duty of the defendant company to provide safe and suitable machinery and appliances, and to furnish competent and vigilant servants for the conduct of its business, and that the plaintiff had the right to presume that it had done so.

It is conceded that the instruction correctly propounds the law.  It is equally clear that it directly applied to the issue made by the pleadings.  It was not, therefore, liable to to the objection that it announced merely an abstract prin-

ciple of law. *Shelton* v. *Cooke*, 3 Munf. 191, and *Johnson* v. *Moorman*, 80 Va. 131. But it was argued that the defendant had not provided safe and suitable machinery and appliances and competent servants, and that therefore there could be no presumption in his case that it had performed its duty; and consequently it was error so to instruct the jury. Such objection to the instruction is based upon a misconception of the evidence, for it clearly shows that the defective couplings which caused the injury to the plaintiff were encountered, and the incompetency of the conductor was manifested, during the progress of the train on its journey, and were not previously known by him.

The other instructions can be more intelligently disposed of after reviewing the material parts of the evidence and recurring to the law applicable thereto.

The plaintiff left Norfolk on December 30, 1891, in the capacity of middle brakeman on a freight train of the defendant company. Upon its arrival at Suffolk the fireman, who had been taken sick, was relieved from duty and the front brakeman put in his place, the effect of which was to devolve all the braking and coupling of the cars on the plaintiff. He was thus required to perform, in addition to his own proper duties as middle brakeman, all the duties of the front brakeman. Against this he remonstrated to the conductor, but to no purpose. The train when it left Norfolk was composed of 45 cars; at Suffolk it took on 16 cars, making 61; and it was ordered to take on 15 more cars upon its arrival at Petersburg. When the train arrived at Petersburg, the engine and ten cars were cut loose and passed through the switch, whence they were backed down the track to the cars which were to be taken into the train at this point. The coupling of the first car was made, and then the train came back to take on the next car. The plaintiff found great difficulty in making this coupling. Five ineffectual efforts were made by him to effect it. These

cars had been in a wreck, which had shivered the dead blocks and badly twisted the draw heads, besides causing one to be higher than the other. After endeavoring unsuccessfully to make the coupling with a stick, the plaintiff informed the conductor, who was near by superintending and directing the coupling of the cars, of the defective condition of the draw-heads and of his inability to make the coupling with a stick. The conductor then ordered him to throw aside his stick and couple the cars with his hand. The plaintiff replied that the coupling, though dangerous, could be made with the hand, if the train was moved back "lightly." Thereupon the plaintiff returned to the car to make the coupling with his hand as he was directed to do, while the conductor signalled the engineer to move the train back for that purpose, but instead of giving the signal to the engineer to back the train slowly and gently as the plaintiff had stipulated should be done, the conductor gave simply the signal to back. The engineer consequently caused it to move back in the ordinary way and at the usual speed, with the result that the hand of the plaintiff was mashed and his arm had to be amputated.

It is perfectly clear that, although the negligence of the conductor contributed to produce the accident, the defective, improper, and unsafe condition of the appliances for coupling the cars was the immediate and primary cause of the injury. But for their condition, which rendered the act of coupling the cars difficult and dangerous, the plaintiff would not have been hurt.

It is a fundamental principle of the law of master and servant that the master personlly owes to his servants the duty of using ordinary care and diligence to provide for their use, in his service, sound and safe machinery, materials and instruments, and such appliances as are reasonably calculated to insure their safety; and he is equally bound to inspect and examine all those things from time to time, and to use

ordinary care and skill to discover and repair defects in them. If, therefore, the master knows, or would have known, if he had used ordinary care to ascertain the facts, that the machinery, instruments, or appliances, which he has provided for the use of his servants, are defective and unsafe, and the servant is thereby injured, the master is liable. This doctrine has been so frequently asserted by courts of last resort and of the highest character that it cannot now be considered open to question.  Sher. & Red. on Neg., sec. 194; *N. & W. R. Co.* v. *Nuckols*, 91 Va. 193; *N. P. R. Co.* v. *Herbert*, 116 U. S. 642; *Fuller* v. *Jewett*, 80 N. Y. 46; *Ford* v. *Fitchburg R. Co.*, 110 Mass. 240; *Spicer* v. *South Boston Iron Co.*, 138 Mass. 426; and *Cooper* v. *P. C. & St. L. R. Co.;* 24 W. Va. 37.

This is one of the personal duties which the master has impliedly contracted to perform towards his servant, and the law will not allow him to escape liability for an injury resulting from the failure to perform it by entrusting the performance of the duty to another.  He cannot divest himself of the duty, nor relieve himself from responsibility for its non-performance, by delegating it to any subordinate officer or servant.  Sher. & Red. on Neg., sec. 204; Cooley on Torts, 561; *Booth* v. *Boston, &c. R. Co.*, 73 N. Y. 38; *Ford* v. *Fitchburg R. Co.*, 110 Mass. 240; *Chicago, &c. R. Co.* v. *Jackson*, 55 Ill. 492; and *Cooper* v. *P. C. & St. L. R. Co.*, *supra*.

In *Northern Pacific R. Co.* v. *Herbet*, 116 U. S. 647, Mr. Justice Field said:

"It is the duty of the employer to select and retain servants who are fitted and competent for the service, and to furnish sufficient and safe materials, machinery, or other means, by which it is to be performed, and to keep them in repair and order.  This duty he cannot delegate to a servant so as to exempt himself from liability for injuries to another servant by its omission.  Indeed, no duty required of him

for the safety and protection of his servants can be transferred, so as to exonerate him from liability."

It is a further principle of the law of master and servant that a master cannot make the wrong of another an excuse for his own default. He cannot shelter himself from liability for an injury to one of his servants behind the negligence of a fellow-servant. If a servant is injured through the fault of the master to perform any of those duties which the law imposes on him personally, such as providing, inspecting, and keeping in repair and good order safe and suitable machinery, instrumentalities, and appliances for the use of the servant in his employment, and such fault of the master proximately contributes to the injury, it is no defence for the master that the negligence of a fellow-servant also contributed to produce the injury. Sher. & Red. on Neg., sec. 187; Cooley on Torts, 560; *Paulmier, Adm'r, &c.* v. *Erie Co.,* 34 N. J. L. 151; *Railway Co.* v. *Cummings,* 106 U. S. 700; *Booth* v. *B. & A. R. Co.,* 73 N. Y. 38; *Cone* v. *D. L. & W. R. Co.,* 81 N. Y. 206; *Elmer* v. *Locke,* 135 Mass. 575; *Railway Co.* v. *Henderson,* 37 Ohio St. 549; and *McMahon* v. *Henning, Receiver,* 1 McCrary, 516.

In *Norfolk & Western R. Co.* v. *Nuckols, supra,* the president of the court, in delivering the opinion, laid down, among other propositions which are fully warranted by the great weight of authority in this State and elsewhere, the following:

" Where the injury to the servant has been occasioned by the default of a fellow-servant, concurring with the negligence of the master, the latter is liable as though he only were at fault."

If, therefore, the conductor was guilty of negligence in the manner of signalling the engineer to back the train, and such negligence contributed to the injury received by the plaintiff, but in giving such signal the conductor was, under the law, merely a fellow-servant of the plaintiff, yet his neg-

ligence, concurring with that of the defendant in failing, in violation of its plain duty, to maintain safe and suitable appliances for the discharge of the duties undertaken by the plaintiff, does not operate to relieve or diminish the liability of the defendant. It is liable for the injury "as though it only were at fault."

Among the rules of the defendant, the following, for freight conductors and freight brakemen, are disclosed by the evidence:

"672. Conductors of freight trains report to and receive their instructions from the train-master. At terminal stations they must obey the orders of the yard-master."

"673. They are responsible for the safety, prompt movement, and proper care of their trains, for the conduct of the men employed therein, and for the signals, lamps, and tools entrusted to their care."

"679. They must see that the couplings and brakes of the cars of their trains are in good order before starting, and inspect them when the train stops for water or for other trains."

"692. Freight brakemen report to and receive their instructions from the train-master. While on the train they are under the direction of the conductor. At terminal stations they must obey the orders of the yard-master."

The writ of error comes before us upon a certificate of the evidence. Viewing the evidence under the settled rule applicable in such case, it shows that Petersburg was not a terminal station of the defendant company, and consequently the plaintiff was subject to the orders of the conductor, and not of the yard-master, when the injury happened.

The inspection of the couplings and brakes of the cars at the time of the accident devolved, under the rules of the company, upon the conductor, and he, in respect to this matter, stood in the shoes of his principal. He occupied,

in relation to it, the place, as denominated by the law, of vice-principal.

The cars had been in a wreck and the couplings thereby injured. Of this the defendant was aware or ought to have been. It was its personal duty to have had them put in good order. It had not done so. This was its own negligence, for which it was liable for a consequent injury to a servant whose duty required him to use them.

If the defendant had not previously acquired knowledge of the defective and unsafe condition of the couplings, it yet did so prior to the injury. The plaintiff informed the conductor of their condition and of the difficulty of making the couple before the attempt to make it was made in which effort he was hurt. The conductor was the representative of the company in respect to this matter, and his knowledge became in the law the knowledge of his principal. But instead of refusing to take up these cars as a part of his train, which he testified it was his right and duty to do, or taking proper precaution to avoid the danger that was liable from using the damaged couplings, he ordered the plaintiff to make the coupling with his hand, and negligently failed to observe the precaution upon which the plaintiff consented, in obedience to the order of the conductor, to undertake the task.

But it was argued by the learned counsel for the defendant company that the plaintiff having discovered that the draw-heads were out of order, and that their bad condition made the effort to couple the cars difficult and dangerous, he assumed the risk in attempting to· couple them, and waived all right of action against the defendant for the injury that ensued.

The train was on its way from Norfolk to Crewe. The defendant company had ordered that these cars, which had the damaged draw-heads, should be taken up and carried forward by the train on its journey. This could not be done

until they were duly coupled into the train. The defects in the couplings were not discovered by the plaintiff until this duty had to be performed. He did not become aware of the defects until it became his duty to adjust the couplings. That was about four o'clock in the morning of a mid-winter night. There was no one to whom he could report their bad condition except the conductor of the train under whose orders he was working. This he promptly did. The conductor replied by ordering him to make the coupling. The coupling was a necessity of the occasion. The duty to make it devolved on the plaintiff by virtue of his employment. Obedience is the primary duty of a servant, and it was incumbent on the plaintiff to couple the cars, unless the act was attended with such great danger that a man of common prudence would not undertake it. This was not the case. The plaintiff saw that the coupling could be effected without injury to himself, if extraordinary care and caution were exercised. He stipulated with the conductor for the observance of the necessary precaution. It is to be presumed that the conductor also thought that the coupling could be effected without necessarily incurring danger, or he would not have ordered it to be done.

When the right of a servant to recover for an injury received while using defective machinery or appliances, which the master has provided for his use, is questioned because of previous notice of the defect, the mere "isolated fact of risk" is not the only matter to be considered. All the circumstances are to be taken into account. The law does not prescribe a rule so inflexible or unwise as that a servant must forthwith refrain from using a defective machine or appliance, or immediately quit the service of the master, upon the discovery of the defect in the machine or appliance, or that he is working by the side of a negligent fellow-servant, upon the pain of conferring immunity upon the master from all liability for an injury incurred in conse-

quence of such defect or incompetency. The true test in all such cases is, whether a person of ordinary prudence, acting with such prudence, would, under all the circumstances, have refused to incur the risk.

In Sher. & Red. on Negligence it is said:

"If a servant of ordinary prudence would not have believed that he could, in the regular discharge of his duties, be injured by the defect, the servant may properly disregard it, without losing the right to complain if, while pursuing his ordinary course, he suffers from such defect. And so, if the danger is one which a servant of ordinary prudence would believe could be entirely avoided by the use of certain additional precautions, the servant would not, by continuing his service, lose his right to recover damages suffered by him, while using such precautions. Sec. 214. See also secs. 211 and 212; and *Hough* v. *Railway Co.*, 100 U. S. 213, 225.

In *Patterson* v. *P. & C. R. Co.*, 76 Pa. St. 393, the court said:

" If the instrumentality, by which the servant is required to perform his service, is so obviously and immediately dangerous that a man of common prudence would refuse to use it, the master cannot be held liable for the resulting damage. * * * But where the servant, in obedience to the requirement of the master, incurs the risk of machinery, which though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable it may be safely avoided by extraordinary caution or skill, the rule is different. In such cases the master is liable for a resulting accident."

The plaintiff followed the order of the conductor, obedience to which the rules of the defendant exacted of him. He did what the exigences of the occasion required of him in the discharge of the service he owed the defendant; and he stipulated for the observance by the conductor of the pre-

cautions which the unsafe implements he had to use sug-
gested.   He himself believed that, if such precautions were
observed, the act required of him could be safely performed;
and it is to be presumed from the order of the conductor,
after having notice of the defect in the couplings, that he
was of the same belief.   The plaintiff did only that which
an ordinarily prudent brakeman would have done under like
circumstances, and his conduct does not bar him from re-
covering from the defendant damages for the injury which
he sustained.

The foregoing principles are now to be applied to the in-
structions complained of.   The main purpose of the objec-
tions made to instructions two and three as given by the
court, and also to the amendments made to instructions two,
three, and four as asked for by the defendant, was to raise
the question whether or not the conductor was a fellow-ser-
vant of the plaintiff.

In the matter of seeing that the couplings and brakes of
the cars of his train were in good order before starting, and
of inspecting them when the train stopped for water or other
trains, he was not a fellow-servant.   For it being the per-
sonal duty of the defendant to inspect and have in good
order the instrumentalities and appliances to be used by its
servants, as well as to provide them in the first instance, and
it having by its rules delegated this duty to the conductor to
the extent above mentioned, he was not in its discharge a
fellow-servant of the crew in charge of the train under his
orders.   Further than this, it is not necessary in this case to
decide, and it is not our purpose to do so.   It will be time
enough to decide the much-mooted question of the relation
of a conductor of a train to the crew under him when it be-
comes necessary to do so.   In so far as the instructions declare
that the conductor was not a fellow-servant of the plaintiff
in the matter of inspecting and seeing that the couplings
and brakes of the cars of his train were in good order, there

was no error; and although the instructions go beyond that in holding that the conductor was not a fellow-servant of the plaintiff, yet, even if erroneous in doing so, the defendant could .not possibly be prejudiced by the error. The evidence conclusively establishes the default of the defendant in having defective and unsafe couplings, which it became necessary for the plaintiff to use in discharge of the duties within the scope of his employment, and that such default was the proximate cause of the accident; and it matters not whether the conductor was a fellow-servant of the plaintiff or not. In either case the result would be the same. Although the conductor was guilty of negligence, and such negligence contributed to produce the injury, yet as it was concurrent with the wrong of the defendant it furnished no excuse for the negligence of the latter and could not effect the extent of his liability for the injury.

Objection was also made to the substitution by the court in the fifth instruction, asked for by the defendant, of the word " efficient " before " men," so as to make the instruction read " efficient men." In this there was clearly no error. It was the duty of the defendant to provide *competent* men for its service. " Efficient," in the relation in which it was used, was the equivalent of " competent," and expresses no more than the duty which the law imposes on the defendant.

The assignment of error that the verdict was contrary to the law and the evidence has already been substantially and fully disposed of adversely to the contention of the plaintiff in error, and need not be separately or further considered.

The final complaint of the petitioner is that the damages awarded by the jury are excessive. There is no legal measure of damages in a case of this kind, and their estimation is peculiarly within the province of the jury, who are deemed especially competent to determine such matters. It is well settled that the court will not disturb the verdict in such a case, unless the amount allowed is so great as to evince

prejudice, partiality, or corruption on the part of the jury, or that they were misled by some mistaken view of the merits of the case. *Farish* v. *Riegle*, 11 Gratt. 697; *N. & W. R. Co.* v. *Shott*, 92 Va. 34; and *Rich. Ry., & E. Co.* v. *Garthright*, 92 Va. 267.

The plaintiff had just attained his majority. He was a young, industrious, and able-bodied man, and was earning good wages. When injured, besides supporting himself, he was taking care of his mother, who was a widow with nine children. He had no resource to this end except his personal labor. He was hurt on December 31, 1891; the trial took place in February, 1894; and up to that time, on account of his physical disability, he had been unable to obtain any employment. The loss of an arm is a serious matter to any person, but peculiarly so to one wholly dependent upon manual labor for a livelihood. The physical suffering he endured from the injury was also to be considered. The amount of the verdict, to-wit, $3,500, does not excite, under the circumstances, a suspicion of the existence of any of the grounds upon which a court may interfere with the verdict.

We are of opinion, upon the whole case, that there is no error in the judgment of the Corporation Court, and that the same should be affirmed.

*Affirmed.*