Statement.

# Richmond.

## TRUCKERS' MANUFACTURING & SUPPLY CO. v. WHITE.

### March 12, 1908.

1. MASTER AND SERVANT—*Safe Appliances—Notice of Defects—Failure to Remedy—Case at Bar.*—It is the duty of a master to use ordinary care to provide reasonably safe and suitable machinery and appliances for the use of his servants, and the master will be held liable for any injury to the servant which results from omission to exercise such care. If the servant, knowing of defects or unsuitableness of an appliance, notifies the master thereof and the master promises to remedy the defect, and the servant in reliance upon such promise continues to use the appliance, and, while exercising due care for his own safety, is shortly thereafter injured in consequence of such defects, the master is liable. In the case at bar, a servant who was not negligent was injured by the use of a defective belt which the master had promised to replace with a new one and which the servant was expecting to be put on at any time, but which had not been done.

2. APPEAL AND ERROR—*Findings of Jury—Conflict of Evidence.*—Where the evidence is conflicting, the findings of the jury on the weight of the evidence is conclusive on this court. The plaintiff in error stands in the position of a demurrant to the evidence.

3. APPEAL AND ERROR—*Verdicts—Conflict of Evidence.*—The finding of a jury on the weight and influence to be given to the evidence in a case, sanctioned by the trial judge, is not to be disturbed on appeal merely because there may be some room for diversity of opinion among reasonable men. It would be an abuse of appellate power to set aside a verdict and judgment because the judges of the appellate court, from the evidence as written down, would not have concurred in the verdict.

4. INSTRUCTIONS—*Incompleteness—Defects Supplied by Other Instructions.*—Where an instruction given is incomplete, but states the law correctly as far as it goes, and the omitted part is supplied by other instructions given, such omission is not reversible error.

Error to a judgment of the Circuit Court of Norfolk county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The following are instructions Nos. 1 and 2, given at the instance of the plaintiff, over the objection of the defendant, and referred to in the opinion of the court:

No. 1. "The court instructs the jury that it is a fundamental principle of law that the defendant owed to the plaintiff the duty of using ordinary care and diligence to provide sound and safe appliances such as were reasonably calculated to insure safety whilst using the same; and was equally bound to inspect and examine such appliances from time to time, and to use ordinary care and skill to discover and repair defects therein. If, therefore, the jury believe from the evidence that the belt complained of in the declaration was defective as alleged therein, and was such that an ordinarily prudent man would not have required his servants to use; that the defendant knew or by the exercise of ordinary care would have known that said belt was so defective; that the plaintiff was adjusting said belt with such care and prudence as an ordinarily prudent man would have exercised under the same circumstances and was injured as a proximate result of said defects, as alleged in the declaration, then the jury should find for the plaintiff, unless they further believe from the evidence that the danger was such that an ordinarily prudent man would have refused to adjust said belt, or unless in adjusting the belt, he was not acting in the line of his employment, or in a line of work which he was accustomed to perform."

No. 2. "The court instructs the jury that if they believe from the evidence that the belt which caused the injury complained of in the declaration was defective and that the plaintiff complained of its defective condition to the superintendent; that the superintendent promised to have the defects in said belt remedied; that the superintendent failed to remedy said defects within a reasonable time, but that the plaintiff, relying on said promise to repair the same proceeded to adjust the belt, and in consequence thereof the injuries complained of in the declaration were inflicted upon the plaintiff, then the defend-

ant is liable, and the jury should find for the plaintiff, unless they believe from the evidence that the plaintiff failed to exercise reasonable care and caution in adjusting the belt, or unless the danger of so doing was so palpable, immediate and constant that no one but a reckless person would expose himself to it even after having received such promise or assurance; or unless in adjusting the belt he was not acting in the line of his employment or in line of work which he was accustomed to perform with the knowledge and assent of the defendant."

*Starke, Venable & Starke,* for the plaintiff in error.

*Jeffries & Lawless,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This writ of error is to a judgment on behalf of the defendant in error, White, who was plaintiff in the court below, in an action for personal injuries sustained by him while in the service of the plaintiff in error.

The company was engaged in the business of manufacturing baskets and barrels; and White, in attempting to place the belt on a rapidly revolving pulley, thirty inches in diameter and eight feet above the floor, received the injury of which he complains.

The plaintiff's version of the accident is, that Copeland, an employee whose *regular business* it was to operate the "basket-bottom machine," on the second floor of the factory, being out of place for the day, he called Whitehead, who had charge of a similar machine on the first floor, "and told him to put the belt on for me, that I had to make some bottoms. And we both went there, and he couldn't put it on, and I told him to get down and I would put it on. I tried it once and it slipped through and burned my hand, and I put my glove on—on

account of being so many places it was pieced, it will burn your hand, and this fellow had a stick to keep it from sliding off, and it slid through my hand, and the place where the gum came together with the leather, it had kind of worn off, and left probably half an inch—the leather belt was half an inch wider than the rubber belt, and it grabbed my glove and pulled my hand up over against the set-screw, and   *   *   *   Whitehead grabbed me by the back of my coat and pulled me down; my glove tore in two,"   *   *   *   The accident resulted in a compound fracture of both bones of the right forearm, necessitating amputation of the arm above the elbow.

The plaintiff rests his right of recovery on the contentions, that he was injured in the service of the master, while in discharge of his duty and in the line, and within the scope, of his employment; that the proximate cause of the injury was a defective belt, which he was attempting to use, by the master's orders and under promise of the general manager that he would replace it with a new belt "as soon as he got a chance."

The principles of law pertinent to the foregoing assertions are laid down by Judge Riely, with his usual precision, in McDonald v. N. & W. Ry. Co., 95 Va. 98, 105, 27 S. E. 821, as follows: "It is a general principle of the law of master and servant that the master shall use ordinary care and diligence to provide reasonably safe and suitable machinery and appliances for the use of the servant, and the master will be held liable for an injury to the servant, which results from omission to exercise such care and diligence.   *   *   *   It is also a settled principle, that a servant, when he enters the service of the master, assumes all the ordinary risks of such service. He assumes, as a general rule, all risks from causes which are known to him, or which are open and obvious, and must exercise reasonable care and caution for his own safety while engaged in the master's service.   *   *   *   It is likewise well settled that if the servant is injured by reason of a defect in the machinery or appliance furnished by the master for the

use of the servant, or its unsuitableness, which defect or unsuitableness is known to him, and the servant, after such knowledge, remain in the service of the master, and continue to use such machinery or appliance without giving notice of the defect or unsuitableness to the master, or without any promise by the master to render the same less dangerous, he will be taken to have assumed the risk of all danger to be reasonably apprehended from its use, and is bound to exercise the care and caution which the perils of the business demand."

By the application of these well settled rules of law to the evidence, this case must be decided.

After defining his general duties as barrel and basket inspector and overseer of the men and machinery on his floor, White testified as follows:

"Q. Was it a part or not of your duty to put on that belt? A. It was my duty. Mr. Allen (general manager) told me to keep the machines up.

"Q. He instructed you to begin the operation of that machine? A. Yes, sir.

"Q. And before you could carry out his instruction it was necessary for you to put the belt on? A. Yes, sir."

With respect to the condition of the belt, the plaintiff's witnesses testified, that it was a "scrap" or "mixed" belt, one part leather and the rest gum. It was fifteen feet long, and composed of nine separate pieces of unequal width, laced together with rawhide thongs. The evidence likewise tended to show that the plaintiff had directed the attention of the general manager of the company to the dangerous condition of the belt, and he had promised to replace it with a new belt.

The defendant traversed these averments of fact, except as to the condition of the belt; and also relies on several grounds of alleged contributory negligence on the part of the plaintiff to defeat a recovery. Thus, it is insisted that it was negligent in the plaintiff "to catch hold of the belt directly in front of the uneven place."

It appears, however, that the parts, of which this composite belt was made up, could only have been approximately about eighteen inches in length, and hence it was not practicable to escape contact with the numerous points of connection, in the manner indicated. The charge that White was guilty of neg-. ligence in holding on to the belt after it began to move on the pulley is not sustained by the evidence of the eyewitnesses of the casualty. Whitehead, an admittedly competent man, testified that White was putting the belt on as he was acustomed to do, and in the only way he knew how to put it on. And White says, the belt slipped through his hand to the place where the gum and leather were laced together, and the leather being wider than the gum "grabbed his glove" as before described.

The chief reliance in this connection seems to be that White used a glove while adjusting the belt. Though several witnesses condemn the use of the glove as an act of negligence, the consensus of opinion is that some protection to the hand was usual in such case. Holland, the superintendent, criticises the employment of a glove, and yet, apparently with the view of showing that the accident was due to White's unskillfulness, he says: "I can go and stand by the side of a belt from now till night and not catch my glove."

In explanation of his continued use of what he regarded an unsafe belt, White said: "I was expecting Mr. Allen to have a new belt put on at any time."

In the foregoing outline of salient points in the testimony, it will, of course, be understood that we are dealing with the case from the standpoint of a demurrer to the evidence. For there was sharp and irreconcilable conflict of evidence upon practically every essential issue in the case; but these issues having been resolved by the jury on the side of the plaintiff, their finding on the weight of the evidence is conclusive upon this court.

Labatt, in the preface to his commentaries on the law of Master and Servant, observes: "It will scarcely be disputed by

any one who is familiar with the law of employers' liability, that the deplorably chaotic condition to which it has been reduced in the United States is due to a cause which is probably more potent for mischief in actions to recover damages for injuries received by servants than in any other class of cases involving the existence or non-existence of negligence, viz. : the difference of opinion which prevails with respect to the limits of the power of a court to override the verdict of juries. In some of the States so large a measure of authority in this regard has been arrogated to themselves by appellate judges, that the actual, as distinguished from the theoretical, system of procedure may fairly be described as being virtually one which compels a plaintiff to establish his case to the satisfaction, not of one jury, but of two."

The doctrine has long been settled in this State, that the finding of the jury on the weight and influence to be given evidence, sanctioned by the trial judge, is not to be disturbed on appeal merely because there may be room for diversity of opinion among reasonable men. In such case it has been said, that "it would be an abuse of the appellate powers of this court, to set aside a verdict and judgment because the judges of this court, from the evidence as written down, would not have concurred in the verdict." *Blosser* v. *Harshbarger,* 21 Gratt. 214, 216; *Va. Fire & Marine Ins. Co.* v. *Hogue,* 105 Va. 371, 372, 54 S. E. 8; *Thomas' Case,* 106 Va. 855, 56 S. E. 705, 1 Va. App. 50; *N. & W. Ry. Co.* v. *Dean's Admx.,* 107 Va. 505, 1 Va. App. 550, 59 S. E. 389.

The company also assigns as error the granting of instructions 1 and 2, at the instance of the plaintiff.

The objection to the first instruction is that "it fails to state the law correctly, in that it tells the jury, in substance, that they must find for the plaintiff, if he was injured 'in the line of his work which he was accustomed to perform,' " without reference to whether the defendant had knowledge of that fact or not.

The omission indicated is harmless error in this instance

and the jury could not have been misled by it, for the precise point is fully covered by other instructions. The governing principle under such circumstances is thus succinctly stated: "Where an instruction given is incomplete, but states the law correctly as far as it goes, and the omitted part is supplied by other instructions given, such omission is not (reversible) error." *Lyles* v. *C. & O. Ry. Co.,* (W. Va.) 59 S. E. 609; 2 Ency. 1 & Pr. 479; Blashfield's Instr. to Juries, sec. 391.

Instruction No. 2 is approved in *Va. &c. Wheel Co.* v. *Harris,* 103 Va. 708, 717, 49 S. E. 991, but it is insisted that it is not applicable to the facts of this case. Without prolonging this opinion by a more detailed review of the evidence, it is sufficient to say, that this objection, and the further objection to instruction No. 1, that there was no evidence to sustain it, are both founded upon misapprehension of plaintiff's evidence.

For these reasons, we think there is no error in the judgment under review, and that it ought to be affirmed.

*Affirmed.*