# Wytheville,

## SCHWAB V. WASHINGTON LUNA PARK COMPANY.

### June 8, 1911.

1. MASTER AND SERVANT—*Safety of Appliances—Promise to Repair.*— It is the duty of the master to use ordinary care to provide reasonably safe machinery and appliances for the use of his servants, and he will be held liable for any injury to the servant which results from his omission to use such care. If the servant, knowing of defects in machinery, or the unsuitableness of an appliance, notifies the master thereof and he promises to remedy the defect, and the servant in reliance upon such promise continues to use the appliance, and is shortly thereafter injured, the master is liable, unless the danger is so manifest that no reasonably prudent person would incur the risk. In the case at bar, it was for the jury to say whether the plaintiff was in the exercise of due care in relying upon the master's promise to repair the appliance which caused his injury, and in making use thereof after knowledge of their condition.

2. DEMURRER TO EVIDENCE—*Master and Servant—Safety of Appliances—Promise to Repair—Case at Bar.*—In the case at bar, the jury might well have concluded that the failure of the defendant to substitute the new trolleys, which had been purchased and were on hand, in the place of the old ones which caused the injury complained of was the proximate and efficient cause of the plaintiff's injury, and that he was not guilty of contributory negligence in relying upon the defendant's promise to repair, and in continuing to use the old trolleys for a reasonable time until the new trolleys were substituted. This being so, upon a demurrer to the evidence, the court must so find.

Error to a judgment of the Circuit Court of Alexandria county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*J. K. M. Norton,* for the plaintiff in error.

*Moore, Barbour & Keith,* for the defendant in error.

Harrison, J., delivered the opinion of the court.

Frederick Schwab brought this action to recover damages for personal injuries resulting, as alleged, from the negligence of the defendant company. The plaintiff was the only witness in the case, and a demurrer to his evidence was filed by the defendant. Thereupon the jury ascertained the damages, and the court gave judgment upon the demurrer to the evidence in favor of the defendant. To that judgment this writ of error was awarded.

The testimony of the plaintiff shows that he was employed by the defendant at its pleasure park to run a machine known as an "ariel swing." The swing was composed of a center shaft to which was attached six swings, each holding eight passengers. There were large uncovered cogwheels at the foot of the shaft. The machine was run by electricity, and when the power was applied the swings circled out from the center until they reached a height of some thirty feet from the ground. The machine was operated both in the day and at night, and was chiefly patronized by women and children. At night the light for its operation, and for the protection of the passengers, was supplied by three small trolleys running on wires attached to the shaft. If all three of these trolleys slipped from the wires the passengers, the large uncovered cogwheels and the operator were left in darkness. When this would happen, the women and children swinging high in the air would sometimes become terrified and attempt to jump out. In such cases it was the duty of the operator to shut off the power and endeavor to get the trolleys back in place. To do this it was necessary to get near the shaft and lean over the uncovered cogwheels, and with a hook on the end of a

58

stick, pull the trolleys into place. The plaintiff, who was the operator, was instructed as to this means of getting the trolleys back into place and had repeatedly performed the duty. When there was no danger to passengers, if all three trolleys slipped off, he would send for or go himself and hunt up the electrician, and bring him to readjust the trolleys, but his general and chief instructions were to look out at all times for the safety of the passengers and to exercise his best judgment for their protection. For some time before the injury complained of, the trolleys which furnished the light had become so badly worn that they were constantly slipping off and leaving the passengers high in the air in darkness. The plaintiff brought this condition of the trolley wheels to the attention of the superintendent, who was in entire charge of the grounds, and urged the importance of substituting new wheels for the old ones, and was repeatedly promised by the superintendent that he would have the trolleys fixed. In pursuance of the instructions of the superintendent, the plaintiff took the trolleys to a machinist to have new ones made by them; the old ones were, however, again put on by the electrician for use while the new ones were being made. Finally the new trolleys were made and delivered to the electrician, whose duty it was to put them on. Not being put on, the plaintiff reported the fact to the superintendent several times, who promised him that he would have them put on, and told the plaintiff to tell the electrician to put them on. This the plaintiff did, saying, "Some time these things are going to fly off and hurt somebody," to which the electrician replied, "I am going to fix them for you; don't you let that alarm you." The new trolleys were under the control of the electrician for at least one week prior to the accident, but were not put on; the plaintiff being left to run the machine with the old trolleys, which were, on account of their badly worn condition, frequently slipping off the wires and leaving the apparatus in darkness.

Schwab *v*. Wash. Luna Park Co., 112 Va. 456.    459

Opinion.

On the night of the accident, between ten and eleven o'clock, all three of the old trolleys slipped off while a number of passengers were in the swings, high in the air, and a woman with a child in her arms became frightened and began holloing, "This thing is going to break down; I am going to jump out." The plaintiff holloed up to her, "For God's sake don't jump; I will try and get you some lights," and immediately shut off the current and attempted to get the trolleys back in place so that there might be light and the woman prevented from jumping out. In doing this he had to lean over the cogwheels in the darkness and reach over with his hooked stick and pull the trolleys back into place. While in this position, in some way not explained, he slipped and one foot was caught in the cogs and crushed off, with part of his leg above the ankle.

It is insisted by the defendant company that the testimony of the plaintiff shows that when all three of the trolleys slipped his instructions were not merely to shut the power off, but to wait until the machine stopped before attempting to readjust the trolleys, and that if he had done this he would not have been injured.

It is clear that the plaintiff is an ignorant man, and that under a rigid cross-examination he had difficulty in making himself understood, and several times made statements that taken alone would seem to sustain the defendant's contention as to his instructions; but, when his evidence is read as a whole it shows very satisfactorily that his understanding of his instructions was, that he was, in the existing emergency, to cut off the current and proceed at once to readjust the trolleys, and especially that his instructions made it his duty in such a situation to use his best judgment to protect the passengers and save them from injury. This interpretation of his evidence is strengthened by the fact, that if the contention of the defendant, that he was to wait until the machine stopped before restoring the trol-

leys, was sound, the swings would have then reached the ground and there would have been no occasion to do anything to protect the passengers or allay their alarm.

The case is before us upon a demurrer to the evidence. The jury might reasonably have concluded from the testimony of the plaintiff, taken as a whole, that the plaintiff, in the course he pursued acted in accordance with the instructions of his master, which did not contemplate his waiting until the machinery had entirely ceased its motion before proceeding to act.

It is the duty of the master to use ordinary care to provide reasonably safe machinery and appliances for the use of his servants, and the master will be held liable for any injury to the servant which results from omission to exercise such care.. If the servant, knowing of defects in machinery, or unsuitableness of an appliance, notifies the master thereof and the master promises to remedy the defect, and the servant in reliance upon such promise continues to use the appliance, and is shortly thereafter injured, the master is liable, unless the danger is so manifest that no reasonably prudent person would incur the risk. It was for the jury to say whether the plaintiff was in the exercise of due care in relying upon the master's promise, and in using the defective trolleys after knowledge of their condition. *Virginia, &c. Wheel Co.* v. *Harris,* 103 Va. 708, 49 S. E. 991; *Truckers Co.* v. *White,* 108 Va. 147, 60 S. E. 630; *Hough* v. *Texas & P. R. R. Co.,* 100 U. S. 213, 25 L. Ed. 612.

In the case at bar the jury might well have concluded that the failure of the defendant to substitute the new trolleys in the place of the old was the proximate and efficient cause of the plaintiff's injury, and that the plaintiff was not guilty of contributory negligence in relying upon the defendant's promise to repair, and in continuing to use the old trolleys for a reasonable time until the new trolleys were substituted. This being so, under the demurrer to the evidence, we must so find.

In the brief the defendant, under Rule VIII, assigns as cross-error the action of the circuit court in overruling its demurrer to the plaintiff's declaration. This assignment of error was not mentioned in the oral argument of the case, and it is sufficient to say that the objection is not tenable. The declaration stated a good cause of action, and the demurrer was properly overruled.

For these reasons, the judgment complained of must be reversed, and this court will, upon the demurrer to the evidence, enter such judgment as the circuit court ought to have entered, in favor of the plaintiff for the amount of damages ascertained by the verdict of the jury.

*Reversed.*