# Richmond.

## Riverside and Dan River Cotton Mills, Inc., v. Carter.

### March 14, 1912.

### Absent, Cardwell, J.

1. Master and Servant—*Unsafe Machinery—Promise to Repair—Assumption of Risk.*—A servant may rely upon the promise of the master to repair defects in machinery for a reasonable time, but if he remains in the service after the expiration of a reasonable time for remedying the defects, he is thereby deemed to have waived the objection and assumed the risk.

2. Master and Servant—*Unsafe Machinery—Promise to Repair—Expiration of Reasonable Time—Assumption of Risk.*—It is error to instruct the jury that the failure of the master to make repairs within a reasonable time after he has promised to make them renders him liable, no matter what period may have elapsed before the injury. The question for the jury to determine is not so much whether the repairs were made within a reasonable time as it is whether the time which elapsed between the promise to repair and the injury was sufficient to put the plaintiff upon notice that the defendant did not intend to make the repairs, thereby shifting again to the plaintiff the risk which the master assumed when he made the promise. If repairs are not made within a reasonable time after the promise to make them, the servant is in the same position as if no promise had been made—that is, he reassumes the risk.

3. Master and Servant—*Injury to Servant—Two Methods of Doing Work—Adopting Unsafe Method.*—If, on account of the darkness of a room, it is not safe to oil machinery therein early in the morning, but it may be oiled with safety later in the day when there is sufficient light, and no restriction is put upon the servant as to the time of day when he shall oil it, it is the duty of the servant to oil the machinery at the time of day when he may do so safely, and if he is injured in consequence of his failure to oil at such time, he cannot recover from the master.

4. Instructions—*No Evidence to Support.*—In a case not calling for punitive damages, and when no evidence has been offered of the relative financial condition of the parties, it is not error to refuse to instruct the jury to "disregard all question of the relative financial condition of the plaintiff and the defendant," as there was no evidence to support it, and none could have been properly offered.

Error to a judgment of the Corporation Court of the city of Danville, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*D. Lawrence Groner*, for the plaintiff in error.

*Eugene Withers* and *Thomas Hamlin*, for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by Felix B. Carter to recover of the defendant Cotton Mills damages for an injury which he alleges resulted from the negligence of the defendant. Carter was employed in July or August, 1910, by the Cotton Mills as a watchman; one of his duties, as claimed by him, being to oil every morning a pump machine situated in the basement of the mill. The vats where the oil had to be poured were low, so that he had to stoop to reach them, and were located within three and one-half inches of certain small uncovered cog-wheels and gearing. The evidence tends to show that the room was not sufficiently lighted to enable one to discharge the duty of oiling the machine without danger, having to stoop very low by the open cog-wheels to see if the vat was full. About a week after beginning to oil this machine Carter complained to the foreman of the mill that there was no hood covering the cog-wheels, and asked him to have one put on, which the foreman promised to do as soon as possible. About ten days later, the foreman having failed to cover the cog wheels, Carter again requested that it be done, and also asked for more light, as oiling the machine was dangerous in a dark room. More than two weeks later, nothing having been done, Carter again requested that the additional light be furnished and a hood put over the cog-wheels, and the foreman promised to attend to it. Some three or four weeks later a fourth request was made for these repairs, and the promise to make them was repeated by the foreman. Several weeks after the last mentioned request was made, while in the act of oiling the machine, the sleeve of

Carter's coat was caught in the uncovered cog-wheels, and his right arm was lacerated and torn.

There was a verdict and judgment in favor of the plaintiff, which this writ of error brings under review.

The demurrer to the declaration was properly overruled. The objection to this action of the court was practically abandoned in the petition, and was not pressed in the oral argument.

Over the protest of the defendant company, the court gave, at the request of the plaintiff, instruction No. 2, which tells the jury that if they believe from the evidence that the machine which caused the injury was defective, and that the plaintiff complained of its defective condition, and of the lack of light in the room in which the machine was placed, to the superintendent of the mills; that the superintendent promised to have such defects remedied, and lights placed in said room; that the superintendent failed to remedy such defects and to place lights in the room within a reasonable time; but that the plaintiff, relying on the promise to repair and furnish lights, proceeded to oil the machine, and in consequence thereof the injuries complained of were inflicted upon the plaintiff, then the jury must find for the plaintiff, etc.

The objection to this instruction is that there is no limitation upon the time in which the servant can recover if the master fails to remedy the trouble within a reasonable time. The question whether or not the plaintiff remained in the employ of the mills beyond that period of time within which he might reasonably have expected the defects to be remedied was not submitted to the jury.

Assuming the complaint and the promise, the instruction merely required the jury to ascertain whether the repairs had been made in a reasonable time after the promise to make them had been made, leaving out of view the duty of the jury to consider and determine, from the evidence, whether or not the plaintiff had waived his objections and assumed the risk of remaining in the service after the defendant had failed to remedy the defects complained of in a reasonable time. The instruction told the jury, in effect, that no matter how long the plaintiff remained in the service after the defendant had failed to make the repairs he

might recover. In other words, if the promised repairs were not made in a reasonable time, that the plaintiff could thereafter remain in the defendant's service indefinitely, confronting constantly the danger of which he had complained, and hold his employer responsible for the resulting injury.

This position cannot be sustained either upon reason or authority. A servant may rely upon the promise of the master to repair defects for a reasonable time, but if he remains in the service after the expiration of a reasonable time for remedying the defects, he is thereby deemed to have waived his objection and assumed the risk. The question for the jury to determine is not so much whether the repairs were made within a reasonable time as it is whether the time which elapsed between the promise to repair and the injury was sufficient to put the plaintiff upon notice that the defendant did not intend to make the repairs, thereby shifting again to the plaintiff the risk which the master assumed when he made the promise.

That the failure of the master to make the repairs within a reasonable time makes him liable, no matter what period may have elapsed before the injury, is a wholly untenable proposition.

So far as advised, this precise question has not been directly passed upon by this court. In the case, however, of *Wheel Co.* v. *Chalkley,* 98 Va. 62–68, 34 S. E. 976, 978, the court says: "Where the master promises or gives the servant reasonable ground to infer or believe that the defect will be repaired, the servant does not assume the risk of an injury caused thereby within such period of time after the promise or assurance as would be reasonably allowed for its performance." The inference from this language is clear that if the servant does remain in the service after the expiration of a reasonable time for the master to fulfill his promise and make the repairs, he thereby again assumes the risk which had shifted to the master by reason of his promise.

In Labatt on Master and Servant, Vol. 1. sec. 425, it is said: "The only rational view seems to be that, as soon as the period contemplated for the removal of the dangerous conditions terminated, the servant's position is precisely what it would have been if no promise had been given—that is to say, he reassumes the risk."

In Wharton on Negligence, sec. 221, the rule is laid down as follows: "The only ground on which this exception can be justified is that in the ordinary course of events the employee, supposing the employer would right matters, would remain in the employer's service; and that it would be reasonable to expect such continuance. But this reasoning does not apply to cases where the employee sees that the defect has not been remedied, and yet continues to expose himself to it. In such case, on the principles heretofore announced, the employer's liability in this form of action ceases. He may be liable for breach of promise, but the causal connection between his negligence and the injury is broken by the intermediate voluntary assumption of the risk by the employee."

In Bailey's Master's Liability, page 206, it is said: "If repair is not made within a reasonable time after the promise, the servant will be deemed to have waived his objections and assumed the risk. See also same author, pp. 208–215.

The statement of the law by these text writers is abundantly supported by numerous courts of high authority. *Eureka* v. *Bass*, 81 Ala. 200, 8 South. 216, 60 Am. Rep. 152; *Stephenson* v. *Duncan*, 73 Wis. 404, 41 N. W. 337, 9 Am. St. Rep. 806; *Corcoran* v. *Milwaukee Gas Co.*, 81 Wis. 191, 51 N. W. 328; *Illinois Steel Co.* v. *Mann*, 170 Ill. 200, 48 N. E. 417, 62 Am. St. Rep. 370, 40 L. R. A. 781; *City of Houston* v. *Owen*, (Tex.) 67 S. W. 788; *Kazmir Andrecsik* v. *New Jersey Tube Co.*, 73 N. J. Law, 664, 63 Atl. 719, 4 L. R. A. (N. S.) 913; *Albrecht* v. *Chicago & N. W. R. Co.*, 108 Wis. 530, 84 N. W. 882, 53 L. R. A. 653; *Counsell* v. *Hall*, 145 Mass. 468, 14 N. E. 530.

In several of these cases the promise was made to repair at a fixed time, and in the others it was to repair, without any time being specified for the performance of the promise. Taken as a whole, the cases establish the doctrine that where the time is fixed for making the repairs the employee is entitled to continue to operate the defective machine at the master's risk until such time has elapsed; and if the promise to repair is, as in the case at bar, indefinite as to time of performance, the employee can continue to operate the defective machine at the master's risk only for such reasonable period as would be sufficient to enable the

master to make the promised repairs; but if, after the time mentioned in either case, the master has not made good his word and made the repairs, and the employee still continues to operate the machine, the risk shifts from the master, and is again assumed by the employee as part of his contract of employment.

In the light of the authorities cited, it is clear that the instruction under consideration was erroneous, in that it took from the jury the determination of the question whether the plaintiff had reassumed the risk by continuing the employment after the lapse of a reasonable time for repairing the defects complained of.

With respect to instruction No. 6, which was asked for by the defendant and refused, it is sufficient to say that if upon another trial the evidence tends to show that it was the duty of the plaintiff to oil the machine, and no restriction was placed upon him as to the time of the day when the oiling should be done, and further tends to show that on account of the darkness he could not oil the machine with safety in the morning, but that by waiting until later in the day the light would be sufficient to enable him to oil it with safety, then the defendant would be entitled to an instruction that it was the duty of the plaintiff, in the exercise of ordinary care, to adopt the safe method, and that if his injury resulted from his failure to oil the machine at the time of day when he could do so with safety, he could not recover. *N. & W. R. Co.* v. *Mann,* 99 Va. 180, 37 S. E. 849.

Instruction No. 7, asked for by the defendant, was properly refused. This instruction told the jury that it was their duty to try the case without being influenced by sympathy, and that they should disregard all question of the relative financial condition of the plaintiff and the defendant, as the jury, equally with the court, is under the solemn obligation of an oath to decide according to the law and the facts. This is not a case which calls for punitive damages, but involves alone the question of liability for negligence. If, therefore, evidence had been offered, which was not done, to show the relative financial condition of the parties, it would have been inadmissible. There was no evidence, and could not properly have been any, upon which to base this instruction. 2 Greenleaf on Ev. sec. 269; *Singer M. Co.* v. *Bryant,* 105 Va. 403, 54 S. E. 320.

Instructions Nos. 8 and 8½, asked for by the defendant, and refused, are fully covered by what has been said in considering instruction No. 2, given at the instance of the plaintiff, which subject need not be further discussed. If the evidence on another trial is the same, and an instruction is asked for by the defendant, which embodies the law as stated in the discussion of instruction No. 2, it should be given.

As the case must go back for another trial, the evidence will not be commented upon.

The judgment complained of must be reversed, the verdict set aside, and the case remanded for a new trial not in conflict with the views expressed in this opinion.

*Reversed.*