Syllabus.

### Richmond.

## VIRGINIA PORTLAND CEMENT COMPANY V. SWISHER'S ADMINISTRATOR.

### November 15, 1917.

1. NEW TRIALS—*Verdict Contrary to the Law and the Evidence—Conflicting Evidence.*—Upon a motion to set aside a verdict as contrary to the law and the evidence, the court cannot undertake to substitute its judgment for that of the jury, even in cases where it thinks the judgment is not sustained by the weight of the evidence, if there be any serious conflict in it.

2. MASTER AND SERVANT—*Death of Servant—Instructions—Assumption of Risk—Duty of Master—Instructions Read Together.*—In an action against a master for the death of his servant through negligence, the jury were instructed that it was the duty of the defendant to exercise ordinary care to provide a reasonably safe place for the servant to work in, and that if the defendant failed in this, and if such failure was the immediate and sole proximate cause of the servant's death, they must find for the plaintiff; and that, while an employee assumes all risks naturally incident to his employment, yet this does not relieve the master from the duty of using reasonable care and diligence in providing a reasonably safe place for the servant to work in, and if the jury believes that the master did not use ordinary care to provide such a place, and that such failure was the sole proximate cause of the injury complained of, the defendant was liable. Another instruction restated these propositions and told the jury that if the master failed to maintain a reasonably safe place, and that he knew or ought to have known it in the exercise of reasonable care, and that such failure was the cause of the injury complained of, he was liable. While admittedly correct statements of abstract propositions of law, it was objected to these instructions that they were defective, in that they overlooked the fact that there could be no recovery if the negligence of the defendant was within the risk assumed by the plaintiff. If there is any force in this objection it had no application in the instant case, as another instruction which, on its face, told the jury that it was

to be read in connection with the instructions set out, told the jury that they were not to find for the plaintiff if they believed from the evidence that the accident occurred through any risk, assumed, and that an employee does assume all risks incident ordinarily to the service and those known to him, or so obvious as to be readily observed by him. This addendum to these instructions, it is believed, covers fully all of the objections suggested.

3. MASTER AND SERVANT—*Instructions—Ordinary Care—Instructions Taken Together.*—In an action against a master for the death of a servant, the court instructed the jury that if they believed from the evidence that the plaintiff's death was due to a defective step, "and that the master, as in said instructions defined, had or should have had knowledge thereof," the master was liable. It was objected to this instruction that it should have said, that in order to make the master liable he, in the exercise of ordinary care, must have had, or should have had, such knowledge.

*Held:* That, there was no force in this objection, as the instructions specifically ordered to be read in this connection, told the jury that the master was only reuired to exercise ordinary care.

4. INSTRUCTIONS—*Not Based on the Evidence.*—It is not error to refuse an instruction where the evidence does not sustain it.

5. MASTER AND SERVANT—*Safe Place to Work—Inspection—Obvious Defects.*—Steps used by a servant at his place of work were unsafe, both on account of the lack of a hand-rail and from the fact that a step was imperfectly nailed. The servant reported to his master that there was no railing on the steps, which was an obvious danger, but did not report that the step was imperfectly nailed, which was not an obvious danger and which could not have been discovered by the servant, except upon an inspection, which the evidence did not show was the servant's duty to make.

*Held:* That, it was the master's duty to inspect the steps and the servant had a right to assume that this duty had been performed, and not unless the defect was an obvious one was he charged with negligence in failing to report, or with any assumption of risk incident thereto.

6. MASTER AND SERVANT—*Safe Place to Work—Steps.*—One who uses steps may assume that all parts of them are safe. He is not required to walk in the middle of them.

7. INSTRUCTIONS—*Application to a Particular Fact.*—An instruction as given contained a full statement of the law applicable to a certain phase of the case. As it was the duty of the jury to apply the law thus stated to the facts, it was unnecessary to

go further and say to them that the law, in addition to its general application, was also applicable to some particular fact.

8. MASTER AND SERVANT—*Instructions—Appeal and Error.*—An instruction in effect told the jury that, after a servant had called his master's attention to a particular danger at his place of work and was told by the master that he must continue to work, and that when other work that was then in progress was completed this particular danger would be removed, if the servant continued to work in these circumstances, so far as this particular danger was concerned, he continued at his own peril.

*Held:* That, this instruction went as far as the court could go upon the master's theory as to this particular danger. Whether it did not go too far in that respect was a question which the appellate court did not decide, because it was given at the instance of the appellant.

9. MASTER AND SERVANT—*Safe Place to Work—Promise of Master.*—Where the master promises or gives the servant reasonable ground to infer or believe that a defect will be repaired, the servant does not assume the risk of an injury caused thereby within such period of time after the promise or assurance as would be reasonably allowed for its performance, unless the danger is so palpable, immediate and constant (of which there is no evidence in this case) that no one but a reckless person would expose himself to it, even after receiving such promise or assurance.

10. MASTER AND SERVANT—*Safe Place to Work—Promise of Master.*—A servant met his death from a fall from an unrailed stairway, by reason of a step being defectively nailed. The evidence showed that a few days before the accident the servant had complained of the absence of a hand-rail and had asked his foreman to make this stairway safe and the foreman had told him to go on with his work and that the place would be fixed as soon as possible.

*Held:* That, in these circumstances, an instruction telling the jury, as a matter of law, that the servant assumed all the risks incident to the lack of a railing at the point in question, would have been erroneous, and that, under the evidence it was a question for the jury (upon proper instructions) whether the servant assumed the risk, or exercised due care in remaining in the master's service, relying upon the promise to provide a hand-rail.

Error to a judgment of the Circuit Court of Augusta county, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*A. C. Gordon* and *D. Lawrence Groner,* for the plaintiff in error.

*Curry & Curry* and *Timberlake & Nelson,* for the defend- in error.

WHITTLE, P., delivered the opinion of the court.

The judgment under review was rendered upon the verdict of a jury awarding damages to the defendant in error for the wrongful death of his intestate imputed to the negligence of the plaintiff in error in whose employment Swisher was at the time he was killed.

The following narration tells the story of his death: The plant of the plaintiff in error is a large manufacturing establishment comprising a number of mills and is equipped with machinery, belting and appliances of various kinds employed in grinding the material used in the production of hydraulic cement. Swisher had been in the employment of the company for years, and at the time of the accident was working under Strause the head miller. His place of work was in connection with a series of bins into which the cement was deposited by conveyors attached to revolving belting. These bins were located thirty feet above the ground floor of the building; and there were narrow walkways railed in on both sides about three feet above the level of the tops of the bins over which he passed in going from one bin to another in the discharge of his duties in looking after the bins and conveyors. The descent from the walk-

ways to the bins was by means of a short stairway, attached to and at right angles with the walkways. These steps were three feet wide and the treads two inches thick and eight inches wide, and overlapped the risers some four or five inches at each end. The stairway was wholly unguarded by balusters or hand-rails of any description, although the situation was rendered especially dangerous in the event of any one falling off the steps by reason of the presence of rotating belting and machinery immediately beneath them. There was no eye-witness to the accident, yet the circumstances convincingly point to the cause and manner of it. For instance, shortly after the casualty occurred, it was discovered that the right-hand end of the second tread of the stairway was tilted upward, and an examination disclosed that the nail intended to hold it in position had missed the riser. In other words, it had never been nailed down. Every surface throughout that part of the building was heavily coated with dust from the ground cement, and it had sifted off from the sloping surface of the tread. Directly beneath this point was a six-inch timber, the surface of which showed an imprint in the dust as if made by a man's arm in an attempt to arrest his fall. On the floor below, Swisher's glove and the heel from one of his shoes were found. It moreover appeared that he fell across the first line of revolving belting, which snapped under the force of the contact with a noise that attracted the attention of the workmen in the building. He was precipitated thence to the second line of belting, moving in an opposite direction to the first, and was carried to and cast headlong into a clutch-mill and killed.

The main features of the case are so satisfactorily discussed in the opinion of the circuit court that, with some supplementary observations, we feel justified in adopting it as the opinion of this court.

Holt. J., who presided at the trial, says: "In this case there has been a trial and a verdict of the jury for the plain-

tiff. This verdict the court is asked to set aside as being contrary to the law and evidence.

"Dealing first with the question of evidence, we are confronted by the familiar principle that the court cannot undertake to substitute its judgment for that of the jury, even in cases where it thinks the judgment is not sustained by the weight of the evidence if there be any serious conflict in it. Without undertaking to discuss it in detail, it is sufficient to say that there is in the record evidence sufficient to sustain the judgment. This exception, is, therefore, overruled.

"We are next to consider what errors, if any, have been committed during the progress of the case.

"None have been urged in argument except those involved in giving or refusing to give certain instructions.

"It is said that the court erred in giving for the plaintiff instructions 3, 4 and 5. These are stock instructions, and it is admitted that they are correct as abstract propositions of law, but it is said that they are defective in that they overlook the fact that notwithstanding negligence may be shown on the part of the defendant, there can be no recovery if the plaintiff himself was negligent, or if the negligence of the defendant was within the risk assumed.

"Instruction 3 tells the jury that it was the duty of the defendant to exercise ordinary care to provide a reasonably safe place for Swisher to work in, and that if the defendant failed in this, and if such failure was the immediate and sole proximate cause of the intestate's death, they must find for the plaintiff.

"Instruction 4 tells the jury that while an employee assumes all risks naturally incident to his employment, yet this does not relieve the master from the duty of using reasonable care and diligence in providing a reasonably safe place for the servant to work in, and if the jury believes that the master did not use ordinary care to provide such a .

place, and that such failure was the sole proximate cause of the injury complained of, the defendant is liable.

"Instruction 5 is in effect a restatement of the proposition contained in instructions 3 and 4, and tells the jury that if the master failed to maintain a reasonably safe place, and that he knew or ought to have known it in the exercise of reasonable care, and that such failure was the cause of the injury complained of, he is liable.

"It is admitted, as we have seen, that these instructions, in so far as they embody abstract principles of law, are correct, but it is said that they fail to take note of the doctrine either of contributory negligence or of assumed risk.

"It is believed that the record in this case shows that if no liability attaches, it is due to the fact that the accident was the result of a risk assumed by Swisher, and not because of any positive or contributory negligence on his part, and it was in view of this aspect of this case that the court gave instruction 8. That instruction, on its face, tells the jury that it is to be read in connection with instructions 3, 4 and 5, given on behalf of the plaintiff, and the court in elaborating that idea to the jury stated to them when this instruction was read, that it was to be considered as much a part of each of those instructions as if it had been copied into each of them; it tells the jury that they are not to find for the plaintiff if they believe from the evidence that the accident occurred through any risk assumed, and that an employee does assume all risks incident ordinarily to the service and those known to him, or so obvious as to be readily observed by him. This addendum to these instructions, it is believed, covers fully all of the objections suggested. It is by no means certain that such a qualification was necessary, but it was given out of abundance of caution, and it is believed to be sufficient in that particular.

"It is said that this instruction itself is defective in that it tells the jury that the master is liable if he had, or should

17

have had, knowledge of the defective step, when it should have said that in order to make the master liable he, in the exercise of ordinary care, must have had, or should have had, such knowledge. Instruction 8, however, says this: 'If, therefore, you believe from the evidence that the plaintiff's death was due to the defective step, and that the master, *as in said instructions defined,* had or should have had knowledge thereof.' Here the master's duty is the duty in said instructions defined, and said instructions 3, 4 and 5 specifically ordered to be read in connection with this instruction, tell the jury in terms that the master is only required to exercise ordinary care. It is next said that the court should have given instruction F, offered on behalf of the defendant. Undoubtedly the court should have given this instruction if there was evidence to sustain it, but this court is of opinion that the evidence does not sustain it, that it does not show that it was Swisher's duty to report defects in the place where he worked, save such as were open and obvious to him, thereby differentiating this case from the case of *Atlantic, etc., Co.* v. *West,* 101 Va. 13, 42 S. E. 914. He did report that there was no railing on the steps. That was an obvious danger. He did not report that the step was imperfectly nailed, because that was not an obvious danger, and there was nothing to show that it could have been (observed) by Swisher, except upon an inspection. It was not Swisher's duty to inspect these steps, and if, under our practice, the jury could have returned a verdict saying in effect that Swisher's death was due to a defect in this step, in that it was imperfectly nailed, and that such defect should have been discovered by Swisher by an inspection thereof, which he should have made but did not, and for this reason the defendant was not liable, then in that case this court would have had to set aside the jury's verdict, because it would not have been sustained by the evidence.

"It is said, also, that the court erred in rejecting instruction G, tendered on behalf of the defendant. That instruction proceeds upon the theory that the same duty rested upon Swisher to discover the defect in the step that rested upon the defendant—that their duties in this respect were correlative. This is not the law. It was the company's duty to inspect the steps. Swisher had a right to assume that this duty had been performed, and not unless this defect was an obvious one was he charged with negligence in failing to report, or with any assumption of risk incident thereto.

"The same reasons led the court to reject instruction K, which also proceeds upon the theory that it was Swisher's duty to inspect these steps.

"Instruction I was rejected because it was framed upon the theory that where an employee has two methods of discharging his duties open to him, one safe and one dangerous, he must adopt that which is safe. This proposition of law has no application to the evidence here. One who uses steps may assume that all parts of them are safe. He is not required to walk in the middle of them. Steps not nailed at all are safe if one will always do that carefully, but of course, this is not required. That he should have stood upon the end of these steps and looked over, was something that any man in discharge of Swisher's duties might have been expected to do.

"It is also said that the court erred because it struck from defendant's instruction C the words, "Include the lack of railing at the point in question." This instruction as given contains a full statement of the law applicable to this phase of the case. It was the duty of the jury to apply the law thus stated to the facts, and it was unnecessary to go further and say to them that this law, in addition to its general application, was also applicable to some particular fact. Such statement would also have been misleading for these reasons.

"Defendant's instruction D dealt with this railing. Whatever may have been the original rights of the parties, it told the jury in effect that after Swisher had called the defendant's attention to this particular danger, he was told that he must continue to work, and that when other work that was then in progress was completed, the railing would be built. This court, in instruction D, said to the jury that such a statement did not constitute a promise, or shift the risk assumed, from Swisher to the defendant. That is to say, the court told the jury that when Swisher continued to work in these circumstances, so far as danger incident to the rail was concerned, he continued to work at his own peril. This was certainly as far as the court could go in this direction. Here the court placed upon Swisher all ordinary risks apparently due to the absence of the rail. There was no misunderstanding on the part of any one, as to the scope of this instruction, and the argument of counsel shows that there was none. It appears from the evidence that the accident did not occur because there was no rail, but because there was a tilting step. Certainly this, in the light of this instruction is, necessarily, what the jury must have believed. The tilting step was not a risk assumed. It was a danger not obvious—a danger that could only have been ascertained by such an inspection as Swisher was not required to make."

With further reference to instruction D, Judge Holt was clearly right in saying that this instruction went as far as the court could go upon the defendant's theory as to the railing. Whether it did not go too far in that respect is a question which we need not decide, because it was given at the instance of the defendant.

The failure of the defendant to rail in the steps from which plaintiff's intestate fell was one of the grounds of negligence alleged in the pleadings. Complaint is made here of the action of the circuit court in amending instruc-

tion "C," requested by the defendant. The instruction as given told the jury that Swisher assumed all the risks incident to his employment in connection with the work in which he was engaged in the mill room, but eliminated the concluding words, "including the lack of hand railing at the point in question." There was evidence tending to prove that a few days before the accident happened Swisher complained to Sprouse, the mill foreman, of the absence of the hand rail, stating that the place was dangerous, and that if they did not fix it he would quit, that he did not care to risk his life any longer. In reply to Swisher's inquiry, "When are you going to fix these bannisters and walkways on top so a man will be safe in getting around?" Sprouse replied, "Just as soon as we can get to them, we are working up to that point, and as soon as we can possibly get there we will do so. Just go ahead." In these circumstances, an instruction telling the jury, as a matter of law, that Swisher assumed all the risks incident to the lack of a railing at the point in question, would have been erroneous.

The rule is thus stated in *Va., etc., Wheel Co.* v. *Chalkley,* 98 Va. 62, at page 68, 34 S. E. 976, at page 978: "Where the master promises or gives the servant reasonable ground to infer or believe that the defect will be repaired, the servant does not assume the risk of an injury caused thereby within such period of time after the promise or assurance as would be reasonably allowed for its performance, unless the danger is so palpable, immediate and constant (of which there is no evidence in this case) that no one but a reckless person would expose himself to it, even after receiving such promise or assurance."

So in *Riverside Mills* v. *Carter,* 113 Va. 346, 74 S. E. 183, it was held: "The question for the jury to determine is not so much whether the repairs were made within a reasonable time, as it is whether the time which elapsed between the promise to repair and the injury was sufficient to

put the plaintiff upon notice that the defendant did not intend to make the repairs, thereby shifting again to the plaintiff the risk which the master assumed when he made the promise. If the repairs are not made within a reasonable time after the promise to make them, the servant is in the same position as if no promise had been made—that is, he reassumes the risk."

Under the evidence in the instant case, it was a question for the jury (upon proper instructions) whether the plaintiff's intestate assumed the risk, or exercised due care in remaining in the master's service, relying upon the promise to provide a hand-rail. *Hough* v. *Railway Co.,* 100 U. S. 213, 25 L. Ed. 612; *Kane* v. *Railway Co.* 128 U. S. 91, 9 Sup. Ct. 16, 32 L. Ed. 339; *N. & W. Ry. Co.* v. *Ampey,* 93 Va. 108, 25 S. E. 226; *N. & W. R. Co.* v. *Wade,* 102 Va. 140, 45 S. E. 915; *Va., etc., Wheel Co.* v. *Harris;* 103 Va. 708, 49 S. E. 991; *Trucker's Co.* v. *White,* 106 Va. 147, 60 S. E. 630; *Schwab* v. *Washington Luna Park Co.,* 112 Va. 456, 71 S. E. 542.

We are of opinion that the jury were correctly instructed, and that the judgment under review ought to be affirmed.

*Affirmed.*