# Richmond

## D. ARONOVITCH, DOING BUSINESS UNDER THE NAME OF KINGS DISTRIBUTORS v. MARION AYRES.

November 11, 1937.

Present, All the Justices.

310

The opinion states the case.

*Royston Jester, Jr., Sinnott & May* and *V. P. Randolph, Jr.,* for the plaintiff in error.

*J. T. Coleman, Jr.,* and *John D. Easley,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

The plaintiff in the court below was injured when riding in the defendant's truck. For injuries so suffered, he recovered a verdict in the sum of $20,607, but was required to remit $12,607 and to accept a judgment for $8,000 or else submit to a new trial. This judgment of $8,000 was accepted under protest and to that judgment the defendant has obtained a writ of error. Because of the remission required, plaintiff has assigned cross-error.

Aronovitch was a wholesale distributor of beer and a seller of soft drinks. In this distribution he operated trucks from Lynchburg to points in New York State. From these points beer in casks and bottles was hauled to Lynchburg, and to them were returned empty containers. In the spring of 1935 the plaintiff began working for the defendant as a seller of soft drinks and continued that work until about July 1st, when he was transferred as helper to one Jesse

Meadows and in that capacity made three truck trips to Rochester, New York. There was a wreck, Meadows was discharged and Ayres was promoted to the position of driver-in-chief and in his turn was given a helper. This situation continued until he was discharged in September. About two weeks later he was re-employed as helper and assistant driver to a man named Scruggs. In that capacity two trips north were made, and it was on his third trip, and on October 16th, that the accident under review occurred.

Scruggs was in general charge; Ayres was his assistant and relief driver. As they drove north from Lynchburg in their truck with trailer attached, they overtook another truck, known in the record as the Wood truck, and followed it for something like three-quarters of a mile. This, upon a signal of their intent, they undertook to pass. Just as this movement was being executed, the forward truck turned to the left—that is to say, turned across the roadway along which they were traveling and into an abandoned road running by it. In the emergency thus created, it became necessary for the defendant's truck either to run into the Wood truck or to turn still further to the left. The driver, Scruggs, chose the latter course and applied his brakes. They were, however, ineffectual, and the truck moved forward until it struck and partially uprooted a large oak tree which stood by the roadway nearly ninety feet away, there being no negligence in anything which Scruggs at this time did. He merely undertook to pass at proper speed and after a proper signal the truck ahead.

It is contended that the accident was due to improper brakes—brakes that were either insufficient or maladjusted. There was a skid mark which began on the paved surface of the highway and continued up to this oak tree, in length about ninety-one feet.

There is evidence in the record tending to show that this truck and trailer, with brakes properly adjusted and with conditions as they were, could have been stopped from within fifty-five to sixty-five feet.

Mr. Stanley, an officer of the Highway Department, said that it could have been stopped within seventy-five or eighty feet—that is to say, this evidence tended to show that these brakes when applied were not as effective as they should have been. And this is strengthened by the fact that they appeared to work with full force on but one wheel; it only was locked, as the skid mark told. Plaintiff in substance claims that this owner permitted this truck to be operated upon the public highways equipped with defective appliances, and that but for these defective brakes it could and would have been safely stopped before it struck the tree and before any damage was done.

In the original and amended notice of motion for judgment there are three counts. In them it is alleged that the plaintiff was a passenger; that Scruggs, the truck-driver, was negligent in attempting to pass the truck ahead and was himself incompetent, and that the truck-owner was negligent in permitting the truck and the trailer to be operated without proper brake equipment.

The truck was a standard truck and comparatively new, having been purchased in August, 1935. Aronovitch explained to its vendor the purposes which he had in view. It was to be suitable for hauling beer from distant breweries in loads approximating twenty thousand pounds. When loaded as defendant sometimes loaded it, its gross weight was thirty-two thousand pounds and at the time of the accident it carried a load of twelve thousand pounds.

Ayres said that the brakes were of good design but were too small when applied to heavy loads and would burn where grades were steep. On the preceding trip he called Scruggs' attention to the fact that they were not holding and was told that they would be repaired.

By way of defense, it is said that the plaintiff was not a passenger; that he did not work under Scruggs but was a fellow-servant; was competent and not negligent; and that the equipment was not defective and particularly that the brakes were adequate, well adjusted and in good condition.

There was a motion to strike when the plaintiff's evidence in chief had been offered, which motion was renewed when all of the evidence was in. When the jury's verdict had been returned, there was a motion to set it aside. All of these motions were overruled, but the trial court, being of the opinion that the verdict was excessive, did, as we have seen, materially reduce it.

Since we are dealing with a verdict affirmed, we must, under familiar rules, assume that all conflicts in evidence were properly decided in favor of the litigant prevailing, provided always that they be supported by testimony which the jury could with fair reason have accepted.

It might have believed that this accident was due to defective brakes. If knowledge of this defect, or failure to supply brakes which should hold, can be charged against Aronovitch, he is liable, for it was his duty to equip this long distance truck with all proper safety appliances; it is a non-assignable duty and cannot be shifted to others.

These trucks, sometimes inordinate in size, measurably monopolize our highways and add to the peril of their use, and it is in the light of their potential destructiveness that a high degree of care is but ordinary care. *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77. Automobiles may not be in themselves dangerous instrumentalities but freight cars which operate along the public highway, intended for the common use of all the people, are.

That brakes be adequate and properly adjusted is not only desirable but imperatively necessary. Should one of these cars break away on some of the streets of Lynchburg shocking results might follow. Against such an accident every possible precaution is but a reasonable precaution. This non-delegable duty rests always upon the master. He must not only see that they, sometimes continental in their operations, are in good condition when they leave their home stations but remain so. If a train from Boston were sent to the Pacific coast and an accident in the Rockies should be suffered, it would be no answer to say that the brakes were all right when it left home. This obligation

was recognized by the owner who directed Scruggs to inspect the truck, its brakes, etc., at the end of each hundred miles and to keep equipment up to standard. Moreover, Ayres said that Aronovitch gave him specific instructions to report to Scruggs anything which might need attention. Something did need attention. Ayres twice told Scruggs on their last trip that the brakes were not holding, and Scruggs twice promised to give them prompt attention.

This knowledge which this vice-principal had is imputed to the master. *Lane Bros. & Co.* v. *Bauserman,* 103 Va. 146, 147, 48 S. E. 857, 106 Am. St. Rep. 872.

We have already reached the conclusion that this accident would not have happened had these brakes been in proper condition and well adjusted. We have also seen that by reason of the severity of the service to which they were subjected close attention was necessary. It was Aronovitch's duty to act upon the information which he had or with which he was charged, and Scruggs' failure to pass on to him Ayres' complaint is no excuse. It was his duty to see that this serious defect in the brakes was remedied before the truck went out again, and that duty was not discharged when he sent the truck to a shop in routine to be overlooked. Ayres' testimony is to the effect that it was not sent to any inspector at all. If this be true, of course the owner was negligent, and he is charged with negligence if he had imputed knowledge of the fact that the brakes were not holding and did not direct the attention of the inspector to this. The failure of these brakes to hold brought about the accident. Aronovitch is charged with knowledge of this possibility.

The defendant, however, contends that even if negligence be conceded, it is the negligence of Scruggs, who was a fellow-servant. Ordinarily there can be no recovery for such an accident unless the common-law rule be modified by statute. It is also true that Ayres and Scruggs were in fact in some aspects of their service fellow-servants.

"All serving a common master, working under the same control, deriving authority and compensation from

the same source, and engaged in the same general business, although in different grades or departments, are fellow-servants, and take the risk of each other's negligence." *Norfolk & W. R. Co.* v. *Donnelly's Adm'r*, 88 Va. 853, 14 S. E. 692.

Each in shifts drove the truck and each helped to load and unload it. But, as we have seen, its care was in terms put upon Scruggs alone; to him Ayres was directed to report and did report. Upon him was placed the burden of seeing that it was kept in condition. He was, *quoad* this duty, vice-principal.

"One servant, however, may be, in relation to a co-servant, a vice-principal in one relation and a fellow-servant in another, depending on the particular duties he is discharging at the time. Whether he is the one or the other, must be determined by an enquiry into the nature of the service which he was performing at the particular time of his alleged negligence. *N. & W. Ry. Co.* v. *Ampey, supra* [93 Va. 108, 25 S. E. 226]; *N. & W. Ry. Co.* v. *Houchins' Adm'r, supra* [95 Va. 398, 28 S. E. 578, 46 L. R. A. 359, 64 Am. St. Rep. 791]; *Mobile & O. R. Co.* v. *Godfrey*, 155 Ill. 78, 39 N. E. 590; 12 Amer. & Eng. Enc. L. 949." *Norfolk & W. R. Co.* v. *Phillips' Adm'x*, 100 Va. 362, 41 S. E. 726, 731. Shearman & Redfield on Negligence, sec. 231.

Moreover, it is contended that the plaintiff knew that these brakes were out of condition and therefore assumed all incidental risks. He did know that they were out of condition or had been out of condition on the preceding trip, but he was told that they would be repaired and he had a right to assume that this had been done.

"Where the master promises or gives the servant reasonable ground to infer or believe that the defect will be repaired, the servant does not assume the risk of an injury caused thereby within such period of time after the promise or assurance as would be reasonably allowed for its performance, unless the danger is so palpable, immediate, and constant (of which there is no evidence in this case) that no one but a reckless person would expose

himself to it, even after receiving such promise or assurance." *Virginia, etc., Wheel Co.* v. *Chalkley*, 98 Va. 62, 34 S. E. 976, 978; *Virginia Portland Cement Co.* v. *Swisher's Adm'r*, 122 Va. 123, 94 S. E. 159; *Jewell Ridge Coal Corp.* v. *Keen*, 123 Va. 514, 96 S. E. 767.

We have seen that the court refused to strike the plaintiff's evidence. In this there was no error. It was ample to sustain a verdict, and a judgment thereon should be sustained unless there is in the record some reversible procedural error.

In support of the motion to strike, this additional reason was assigned:

" * * * We move the court to strike any evidence relating to the incompetency or unfitness of Scruggs as a truck driver, because, even though he was incompetent and an unfit driver, and even though this was known to the defendant, that, of itself, gives no right of action, because, in order to recover on that alleged count, of negligence, the plaintiff must show, as an independent fact, that the incompetency of Scruggs was the cause of the injury."

The principle here relied upon finds support in *Norfolk & W. R. Co.* v. *Phillips' Adm'x*, 100 Va. 362, 41 S. E. 726; *Virginia Ry. & P. Co.* v. *Davidson's Adm'r*, 119 Va. 313, 89 S. E. 229; and in *Southern Ry. Co.* v. *Mason*, 119 Va. 256, 89 S. E. 225. See also, the leading case of *Fonda* v. *St. Paul City Ry. Co.*, 71 Minn. 438, 74 N. W. 166, 70 Am. St. Rep. 341.

A master is responsible for damages suffered through the negligence of his servant, whether that servant be in fact competent or incompetent. Plainly he cannot escape liability by showing that his servant was a skilled worker, and that his skill was one of the reasons which brought about the employment. Nor is he made liable by the mere fact that an accident occurred. Negligence also must be shown. If negligence is not made to appear, there is no liability, however unskilled the workman may be or however careless he may have been on former occasions. Between incompetency, carelessness and the accident there

must be some causal connection. One may not be convicted simply because his character is bad, nor can masters be mulcted in damages merely because they were careless in the selection of their servants.

However, when, as here, the doctrine of the fellow-servant is invoked to escape liability, a different principle applies. One must not knowingly subject his servants to the hazards of incompetent or careless associates. In such a case, the fact that injury was suffered at the hands of a fellow-servant may be no defense at all.

"Among the duties which the master personally owes to his servants is that of using ordinary care to select competent servants, that is, servants of sufficient care, skill, prudence and good habits to make it probable that they will not cause injury to each other, and to dismiss servants who show such a want of these qualifications as to give reasonable ground for apprehension that they will injure their fellow servants. Ordinary care, in such cases, implies the usual diligence, which a prudent man, in the same line of business, would use in making inquiry, * * *." Shearman & Redfield on Negligence (6th Ed.) sec. 189; Labatt on Master & Servant, sec. 1081; *Hough* v. *Railway Company*, 100 U. S. 213, 25 L. Ed. 612; *Virginia Ry. & P. Co.* v. *Davidson's Adm'r*, 119 Va. 313, 89 S. E. 229. In the latter case there is cited with approval this statement of the law by Professor Wigmore:

"Where, by the substantive law, an employer's liability for injuries done by his employees depends upon his selection of a competent, employee, it is well settled in all jurisdictions that the reputation of the employee is receivable to show that the employee's character in respect to competency was known to the employer." 1 Wigmore on Evidence, sec. 249.

Aronovitch contends that Ayres and Scruggs were fellow-servants. This evidence was therefore competent. It tends to show that Scruggs was a man of undesirable habits and an unsafe driver, and though controverted, its weight was for the jury. There was no error in its ad-

mission and no error in plaintiff's instruction No. 8, which deals with this subject.

 It is further contended that the court should have, on motion, stricken out count No. 1 in the motion for judgment, which charged that Ayres was a passenger. No real effort was made to show that he was, and so this motion might well have been sustained. *Norfolk & Portsmouth Traction Co.* v. *Ellington's Adm'r*, 108 Va. 245, 61 S. E. 779, 17 L. R. A. (N. S.) 117. The same end might have been attained by an instruction telling the jury to disregard the claim made in this count. What the court did was to refuse all instructions offered on behalf of the plaintiff, authorizing any recovery on that basis. But these rejected instructions of course never went to the jury. However, since they were rejected, it is fair to assume that no claim for recovery on this theory was made in argument and there is nothing in the record which shows or which tends to show that Ayres was a passenger. Upon a careful consideration of the entire record, we do not believe that the jury could have been misled in this particular or that its verdict was based upon any such theory. Our conclusion, therefore, is that error was committed but not reversible error.

 Objection is made to plaintiff's instruction No. 1. That instruction sets out statutory rules governing the operation of motor vehicles on public highways. Much of it is inapt and deals with situations which never obtained in the instant case, and so should not have been given; but we do not think the jury could have been misled. For example, it was told that the offending truck should have moved on the right-hand side of the road. Of course that rule has no application when there is an attempt to pass the car ahead. Again, it is told that when such an attempt is made proper lookout must be kept for approaching vehicles. There were no approaching vehicles. Manifestly it is unnecessary to tell the jury what the defendant's obligations were in non-existent circumstances. This work of

supererogation might at times constitute reversible error. We hold that it does not amount to that in the instant case.

Plaintiff's instruction No. 2 was objected to because it said that he, by his own evidence, knew of the condition of the truck and so assumed the risk incident to its use. For reasons heretofore stated that objection is without merit.

Instruction No. 5 was objected to because it is said that it tells the jury that as a matter of law Scruggs was a vice-principal. That it does not do. It does tell the jury that if certain duties devolved upon him, he was vice-principal as to them. There is no error in this.

Plaintiff's right to recover rests upon these facts, supported by evidence which a jury might have believed: Scruggs when acting as vice-principal was told by Ayres that the truck brakes were out of repair. He promised to have that defect remedied but did nothing. When the Wood truck turned to the left, brakes were applied. They locked only one wheel. Had they been in good condition the truck would have been stopped, according to the estimates of different witnesses, within fifty-five to eighty feet. It ran for ninety-one feet and then struck a large oak tree with such force that it was partially uprooted. The jury was warranted in believing that but for this want of braking power, there would have been no accident at all.

Cross-error has been assigned. The jury's verdict was for $20,607. That was reduced by the trial court to $8,000 and on it judgment went. It was accepted under protest.

We had occasion in the recent case of *Stallard* v. *Atlantic Greyhound Lines* (Sept. 23, 1937), ante, p. 223, 192 S. E. 800, to consider the matter in issue here. Our conclusion is: The trial court has no power to reduce the verdict unless it appears that the jury was actuated by some improper motive or was misled by some mistaken view of the merits of the case.

Since extrinsic evidence is seldom available, we must look to the verdict itself, which may bear upon its

face internal evidence of such influences. Reports are full of such cases, each of which in a large measure turns upon its own facts.

In *C. & O. Ry. Co.* v. *Swartz,* 115 Va. 723, 80 S. E. 568, a verdict for $17,000, given because of a broken leg and other injuries, was sustained. In *C. & O. Ry. Co.* v. *Carnahan,* 118 Va. 46, 86 S. E. 863, a verdict for $25,000 for the loss of a leg was sustained.

In *DuPont de Nemours & Co.* v. *Taylor,* 124 Va. 750, 98 S. E. 866, 870, there was a verdict for $10,000. The trial court reduced it to $8,000. It was reinstated. This court said:

"There is no measure of damages in cases of this kind, and there has not yet been discovered any standard by which to measure in dollars and cents the value of physical pain and suffering. It is a matter which must be left to the judgment and discretion of an impartial jury, and no mere difference of opinion of the trial judge, however decided, will justify an interference with their verdict, unless it appears from the record that the jury has been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case."

An extended discussion will be found in *C. & O. Ry. Co.* v. *Arrington,* 126 Va. 194, 101 S. E. 415. There the plaintiff, who had lost an arm, was given a verdict of $30,000. It was held to be excessive. Certiorari was denied. *C. & O. Ry. Co.* v. *Arrington,* 255 U. S. 573, 41 S. Ct. 376, 65 L. Ed. 792.

In *P. Lorillard Co.* v. *Clay,* 127 Va. 734, 104 S. E. 384, a judgment of $15,000 for the loss of an eye was reduced to $10,000.

Judge McLemore in *Farris* v. *N. & W. Ry. Co.,* 141 Va. 622, 126 S. E. 673, 674, commenting upon these two cases, said:

"We think the 'average verdict rule' cannot be invoked where the injuries are internal, and have produced a condition of greatly impaired earning capacity, continuous pain and suffering, and a dislocated kidney that may or may not

produce serious results. We have been referred to no case of a similar character from which to evolve a basis for measuring the correctness of the present verdict, and from the nature of the injuries claimed to have been sustained such could hardly be expected. We are of the opinion therefore that the cases of *C. & O. Ry. Co.* v. *Arrington,* 126 Va. [194], 217, 101 S. E. 415, and *P. Lorillard Co.* v. *Clay,* 127 Va. 734, 104 S. E. 384, with which we are in entire accord —render us no assistance in determining the question here involved."

In *Morris & Co.* v. *Alvis,* 138 Va. 149, 121 S. E. 145, it appears that a segment of the plaintiff's backbone was fractured and that he had to wear a brace. For that injury he was given a verdict of $10,000, which was sustained.

In *Colonna Shipyard* v. *Dunn,* 151 Va. 740, 145 S. E. 342, a verdict of $35,000 was sustained. The plaintiff there was totally disabled.

In *American Oil Co.* v. *Nicholas,* 156 Va. 1, 157 S. E. 754, a verdict of $25,000 was reduced to $10,000 and that this court affirmed. The plaintiff was burned but not disfigured. His vision was not impaired and there was no enduring shock to the nervous system. He had a crippled little finger, a weakness in one ankle and some "lack of address" in the use of the forearm or wrist. His physician said that he would probably make a complete recovery.

In *Kenny Co.* v. *Solomon,* 158 Va. 25, 163 S. E. 97, a verdict for $2,500 was set aside as excessive.

In *Rawle* v. *McIlhenny,* 163 Va. 735, 177 S. E. 214, plaintiff's arm was severely injured in an automobile accident. It necessitated an actual outlay of $1,300 for medical attention, etc. A verdict of $1,500 was set aside as inadequate and one for $5,000 was afterwards sustained.

In *Arrington's Case,* in *Clay's Case,* in *Dunn's Case,* and in *Rawle's Case,* the authorities are elaborately reviewed. It would be unfruitful to paraphrase or to restate what is there said. Since there is no standard of measurement, we are thrown back upon the conscience of the court, aided, however, at times by the "average verdict rule." The ver-

dict, large or small, must stand unless it is manifestly out of line and shocks our sense of justice.

■■■ The character of the injury in each case is entitled to careful consideration, for upon it should turn the *quantum* of the recovery. Moreover, the judgment of the presiding judge should be sympathetically received. In many instances compensation is impossible. How could one be compensated for permanent paralysis?

■■ Courts heretofore, in estimating the value of a recovery, have looked to the income which it would produce, estimated usually on the basis of a 6% investment. Today safe 6% investments are no longer available. Moreover, the dollar is not what it once was, but the value of a leg has not changed.

Plaintiff when hurt was twenty-five years old. His earnings were around a thousand dollars a year. $20,000 at 4% gives us $800, subject to taxes and to the hazards of investment, and subject also to deductions for counsel fees.

What of Ayres' injuries? His physician has told us:

"He was in a very bad state of shock; he was suffering excruciating pain and his breathing was very difficult; he was expectorating some blood and he had numerous bruises and cuts around his eye and the lobe of his ear was practically torn off and he could not use his arm and he suffered excruciating pains when he breathed. We got him to bed and treated him for shock and then air began to come out of the tissues; you could press on his skin and there would be air there, showing that the lung was punctured, and air was all out in the tissues. We then took a blood test and the skin was bloody and the respiration was bad and we put him in an oxygen tent and kept him in there a week or ten days and strapped his chest up, and the pain was excruciating—he had two broken ribs, and with the ribs broken into short spicules or points, they penetrated his lungs. * * * He had paralysis of the whole arm; he had paralysis of the right side of the face and had some difficulty in the vision of the right eye, he had a fractured shoulder blade and part of the conoid process * * *."

Paralysis of the face and paralysis of the arm still continues. The physician said that an operation might help the use of the arm, but that it was problematic. "He is permanently disabled, and will be partially disabled the rest of his life. I don't think he will ever be able to do any hard work." When he can work at all, he must follow some other calling. Sight in the right eye is impaired to something like 50% and that also is permanent.

■■ We cannot say as a matter of law that, for all of this, $20,000 is excessive compensation. It is large and it is possibly greater than we ourselves would have assessed, but our judgment is not to be substituted for that of the jury. It, within wide limits, binds us, where the only evidence relied upon is the face of the verdict itself. From what has been said, it follows that it must be reinstated. Final judgment for $20,607 with interest from May 14, 1936, must be entered here.

*Reversed and final judgment.*

GREGORY, J., concurs in result.