# Wytheville

FRUIT GROWERS EXPRESS COMPANY V. FLEDA E. HULFISH.

June 12, 1939.

Record No. 2075.

Present, Campbell, C. J., and Holt, Hudgins, Gregory,
Eggleston and Spratley, JJ.

The opinion states the case.

*Gardner L. Boothe* and *Armistead L. Boothe,* for the plaintiff in error.

*Frederick L. Flynn,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was instituted by Fleda E. Hulfish, hereinafter referred to as the plaintiff, against the Fruit Growers Express Company, a corporation, hereinafter referred to as the defendant, to recover damages for personal injuries occasioned to her in a collision between two automobiles.

The jury returned a verdict for the plaintiff in the sum of $1500, which was affirmed by the trial court.

The principal questions for our determination are whether the evidence is sufficient to support the verdict of the jury, and whether the damages are excessive.

The evidence viewed in the light most favorable to the plaintiff is as follows:

On April 9, 1938, James E. Hulfish, accompanied by his wife, the plaintiff, was driving an automobile southwardly on Peyton street, near its intersection at right angles with Duke street, in the city of Alexandria, Virginia. A few yards north of this intersection, Peyton street is joined at a forty-five degree angle by Commerce street, which comes into the junction from a northeasterly direction. Duke street runs east and west, and Peyton street runs north and south. At the intersection with Duke street, Peyton street comes to a dead end, affording an outlet only along Duke street. In the triangle formed by the intersection of Commerce street with Duke street, on the northeast corner of Duke street, there is a two-story brick house, which cuts off the eastern approach of Duke street from the view of persons entering that street from either Commerce or Peyton streets.

As the Hulfish car, a Nash sedan, approached the intersection of Peyton and Duke streets, the driver slowed his car down, and after looking to his right and left, and not seeing any approaching automobiles, began a left-hand turn into Duke street at a speed of ten to twelve miles per hour. When he had gotten halfway across Duke street, he saw a truck, owned by the Fruit Growers Express Corporation, coming west down Duke street. Mrs. Hulfish testified that the truck was in the middle of the street, advancing at a fast speed. Mr. Hulfish estimated its speed at from twenty to twenty-five miles per hour. After the Nash sedan had gotten a short distance south of the middle of the intersection of Duke and Peyton streets, and on its right-hand side of Duke street, it was struck by the truck. The truck's left front fender and bumper struck and knocked loose the center steel post between the two doors on the left-hand side of the Nash. All of the damage to the sedan was on its

left side from the center to the rear, and the truck was damaged only on its front.

The weather on the day of the accident was rainy and misty. The paving on Duke street was macadam, and at that time was wet and slippery. There was no other traffic in the immediate vicinity of the collision to interfere with the operation of the two cars here involved. When the truck driver first saw the Hulfish car, which had already entered the intersection from his right, he was approximately ten feet east of the Peyton street intersection and forty feet from the Nash sedan. He says he was driving close to his right-hand side of the street at a speed of about twenty miles per hour. He immediately applied his brakes, and the truck skidded twenty-five feet to the left.

Marks on the street pavement showed that when the truck began to skid, its right wheels were slightly to the right of the center of the street, and its left wheels were to the left of the center. While in this skid, the truck collided with the left side of the Nash sedan. When the two automobiles came to a stop, the right front wheel of the Nash was against the south curb of Duke street, and its right back wheel was from two to six feet from that curb. The front part of the truck was jammed against the Hulfish car, and its body extended across the middle of the street in such a manner that it was barely possible for a car to pass between the north curb and the end of the truck. Duke street is thirty feet wide.

Mr. Hulfish testified that the truck driver told him immediately after the accident that the application of the brakes on the truck caused its wheels to lock, and the truck to skid across the street to its left.

Mrs. Hulfish's injuries consisted of a slight concussion, lacerations of the mouth, bruises on her breast and other parts of her body, a contusion of her left knee, a gouged place in her leg and shock. She complains of resulting headaches and a highly nervous condition. Her doctor testified that the bruises were "pretty bad." She was confined to

her home for three weeks, and her medical bill, including the charge for X-ray pictures, was $75.

The jury were fully, fairly and accurately instructed on the law of the case. There were no objections to the instructions.

■ There would have been no collision if the drivers of the two automobiles had each exercised ordinary and reasonable care. The negligence, if any, of Mr. Hulfish cannot be imputed to Mrs. Hulfish, who was merely a passenger in the Nash sedan and had no control over its operation. Mrs. Hulfish is not chargeable with the failure to keep a proper lookout or with contributory negligence. If the negligence of the driver of the Nash car was the sole proximate cause of the collision, the defendant is not liable. However, if the driver of the truck was solely guilty of negligence or guilty of negligence, either concurring or contributing as a proximate cause of the collision, the defendant is liable.

■■ The evidence of the plaintiff is not incredible. Her version is supported by the physical facts. It is obvious that evidence presented the following questions of fact to the jury: Whether the defendant's driver had his truck under control, was keeping a proper lookout under the circumstances, or was driving on the wrong side of the highway, and whether his acts of omission or commission concurred or contributed to the collision.

It is plain from the evidence the jury could have found that if the truck driver had been keeping a proper lookout, with his car under control, he would have seen the Nash enter the intersection first from his right at least forty feet ahead of him, and with the Nash proceeding forward, could have turned to his right and passed safely to the rear of the car; or that if the truck had been properly proceeding close to its right-hand curb instead of in the middle of the street, considering the speed of both cars, it could have, in the absence of skidding, passed straight ahead or turned right into Peyton street.

Such conflicts as were presented on the foregoing issues of fact were resolved in favor of the plaintiff.

■■■ Under familiar and well established principles, juries are the triers of facts and determine the credibility of witnesses and the weight to be given their testimony. Their findings of fact are entitled to great respect when supported by credible evidence, and that respect is increased when their verdict is approved by the trial court. We cannot challenge the jury for their views when there is support for their position. This principle has been so repeatedly asserted that there is no need for citation of authority.

Each case must be considered upon the peculiar facts of that case. It is rare that facts and issues are identical. Cases involving contributory negligence on the part of a plaintiff driver, or of a plaintiff chargeable with responsibility for the negligence of the driver, are not in point here. The principles relied on in such cases are applicable to the facts of those cases. We are in the instant case concerned only primarily with the sufficiency of the evidence to establish material negligence on the part of a defendant's driver.

■■■ It is also the peculiar and special province of the jury to fix the amount of damages. In the absence of passion, prejudice, or partiality in fixing a sum for unliquidated damages, we cannot set their verdict aside merely because it is large, or because we might have awarded less. We have not yet discovered any legal standard by which we can measure in dollars and cents the value of mental and physical pain and suffering. This subject has been exhaustively discussed in Virginia, and the rule firmly established. There is no cause shown for making an exception to the rule in this case. *Aronovitch* v. *Ayres* (1937), 169 Va. 308, 193 S. E. 524; *Stuart Circle Hospital Corporation* v. *Curry* (decided June 12, 1939), post, page 136, 3 S. E. (2d) 153.

We find no error in the judgment complained of. It is affirmed.

*Affirmed.*