# Wytheville

## MIDDLESBORO COCA-COLA BOTTLING WORKS, INC. v. HENLEY CAMPBELL.

June 8, 1942.

Record No. 2533.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Donald T. Stant, Bradley Roberts* and *W. L. Davidson,* for the plaintiff in error.

*George P. Cridlin, Joseph N. Cridlin* and *Robert B. Ely,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was brought by Henley Campbell against the defendant, Middlesboro Coca-Cola Bottling Works, Inc., to recover damages suffered by him as a result of drinking noxious materials contained in a bottle of Coca-Cola, a soft drink manufactured and bottled by the defendant. The trial resulted in a jury's verdict in favor of the plaintiff in the sum of $850 upon which the trial court entered final judgment.

The principal assignment of error by the defendant is that the evidence was insufficient to justify the verdict. It is based upon the grounds: (1) that there was no evidence

to show what caused the plaintiff's injuries; and (2) that it was not shown that the contents of the bottle in question were of a nature to cause the injuries complained of.

The facts and circumstances are not greatly in dispute. Stated from the standpoint of the plaintiff, in view of the finding in his favor, they are as follows:

On Saturday, April 6, 1940, about nine-thirty p. m., Henley Campbell, a young man employed as a miner, entered the small restaurant of a Mrs. Johnson in Rose Hill, Lee county, Virginia, with a companion, David Dean. He ordered two "hot dogs" for Dean and himself. The "hot dogs" were the usual wieners or frankfurters heated and placed in a bun and served with chili sauce. The sauce had been prepared and made by Mrs. Johnson. When the "hot dogs" were served, Campbell ordered a Coca-Cola, his companion declining to have one. Mrs. Johnson got a Coca-Cola from her refrigerator, opened it, and delivered it to Campbell in the booth in which he and Dean were sitting.

Campbell began eating the "hot dog" and drinking the Coca-Cola. Almost immediately he noticed that his mouth was "kinda burning a little." He thought it was the chili sauce and said something to Mrs. Johnson about making it too hot. She examined and tasted the chili and found that it was wholesome and properly prepared. She said that she had served her little three-year old niece with a "hot dog" and some of the same sauce shortly before "and it didn't hurt her any."

Thereafter Campbell continued to drink the Coca-Cola in order to relieve the burning. Finally he became sick and went outside and vomited. On returning to the restaurant, he drank some more of the Coca-Cola "to kinda settle" his stomach.

Discovery of a foreign substance was first made after the last drinking of the Coca-Cola. "Dean, he spoke something about it could be that, and he looked, and there was something sticking in the bottle right in the little curved place in the bottle, in the bottom of the bottle, * * * and they all

began looking at it." Campbell said: "I seen it in the bottle when he said there was something in it."

Mrs. Johnson was called and she took the bottle to the kitchen and poured the balance of the Coca-Cola, measuring about two inches from the bottom of the bottle, into a glass. She reported the foreign substance to be about the "size of a forefinger," one inch or two long, but small enough to come through the neck of the bottle. There were also similar and smaller particles floating in the liquid. The substance was variously described. Campbell said it resembled "a streakish kind of meat or something." It reminded Mrs. Johnson "of lean meat with white particles." Dean said it looked like several pieces of meat floating around. Upon close examination, an odor was discovered, described as smelling like a disinfectant or carbolic acid.

Campbell became pale and sick, complaining of burns about his mouth and stomach. He immediately went to see a doctor, to whom he stated he had been poisoned and had vomited. The doctor, thinking that the vomiting had removed the cause of his illnes, prescribed nothing for him at that time but directed him to go to a hospital the following morning for a check-up on his condition. The doctor did observe that his mouth was irritated at the corners, and that he appeared to be nervous and excited.

Campbell was unable to sleep that night. Although his wife and members of his family gave him some simple domestic anti-dotes, lard and raw eggs, for poisoning, his mouth and stomach continued to burn; his stomach gave him trouble for four or five weeks, during which time he got little rest; and he was confined to a diet consisting chiefly of sweet milk. Some small ulcers developed on his tongue and some irritation arose in his mouth and on the outside of his lower lip. Campbell was unable to perform his usual work for a period of nine weeks. He consulted several physicians without receiving relief. He lost thirty pounds in weight within the first five weeks after his injury, and a year later, at the date of his trial, he was fifteen pounds off weight.

Mrs. Johnson testified that the Coca-Cola which she sold

to Campbell was supplied to her by the defendant corporation.

The evidence of the defendant shows that its plant has modern equipment and that its process of manufacture is an improved one. Its machinery is designed to thoroughly wash and sterilize the empty bottles. During the cleansing process, the bottles are washed with two solutions of hot caustic soda. After being washed and sterilized, they are inspected and then conveyed by machinery to a stand where they are filled with syrup and carbonated water and capped by machinery, also undergoing inspection in the latter process.

When the plant is running at normal capacity, two men are required to make the final inspection of seventy bottles every minute, at the same time turning the bottles over to mix the contents of syrup and carbonated water already placed in them.

Notwithstanding the precautions taken, the foreman of the defendant factory admitted that he had seen a foreign substance as large as a clothespin come through without stopping the machinery. He also admitted that sometimes hairs or bristles off the machinery come through in the bottles; and that once in a while there might remain in the bottle some things which the cleansing brushes would not remove nor the inspections disclose.

The remaining contents of the bottle from which Campbell drank were analyzed by chemists on August 6, 1940, four months after the accident, and found to contain foreign matter consisting of 0.28% soap and 0.04% sodium hydroxide or caustic soda. The form of the matter was described as being an undissolved substance, not a solid but a precipitate, the result of some process, suspended in the solution. Although several physicians testified, they were not asked the effect of the analyzed contents upon the human body. The nauseous effect of the foreign substance, described by witnesses for the plaintiff, was undenied.

There is no evidence or suggestion in the evidence to show that the bottle of Coca-Cola had been tampered with

after it had ben supplied to Mrs. Johnson, or after its sale to the plaintiff.

The defendant contends that the trial court should have struck the evidence of the plaintiff because the defendant's evidence showed that it exercised the highest degree of care in its manufacturing and bottling process and because no specific act of negligence was shown against it. This is completely answered in *Norfolk Coca-Cola Bottling Works* v. *Krausse, infra.*

██ If all the precautions planned by the defendant had been taken at the time when the bottle in question was cleaned, filled, and capped, it would seem improbable, if not impossible, that any solid substance or foreign material could have remained in the bottle, or if it remained could have passed unnoticed upon inspection. That is to say, if the machinery worked properly no foreign matter would have remained in the bottle after it had been washed and sterilized; and even if, by the failure of the machinery to perform its function, foreign matter did remain, due care in the preliminary and final inspections would necessarily have disclosed its presence. We know, however, that machinery breaks down and employees at times fail to perform their assigned duties. This is manifested by the numerous cases of this character in which recovery has been sought. Therefore, the courts have been led to say in cases like this where the facts are peculiarly within the knowledge of the defendant and where an accident will not happen in the ordinary course of events, except through the negligence of the defendant, that a presumption of negligence arises from the happening of the accident, which, if not satisfactorily explained by the defendant, authorizes a recovery. 22 Am. Jur., Food, sec. 116.

In considering this case, it is not necessary to look for authority outside of this State. There are many cases, involving similar facts and questions of law reported from other jurisdictions, with varying conclusions. This case, however, is controlled by *Norfolk Coca-Cola Bottling Works* v. *Krausse,* 162 Va. 107, 173 S. E. 497, which reviews many

of the authorities and discusses the general principles, and by *Campbell Soup Co.* v. *Davis*, 163 Va. 89, 175 S. E. 743.

In both of these cases, in accord with the heavy weight of authority, we held that:

█ "Foreign substances in food packages not tampered with are in themselves evidence of negligence. When that is shown, a *prima facie* case has been made out, which, if not overborne by evidence for the defendant, is sufficient to sustain a verdict for the plaintiff. Evidence of a high degree of care may be sufficient, but such evidence is in conflict with a *prima facie* case, and should go to the jury. Its verdict must be sustained unless 'plainly wrong.' "

See *Fisher* v. *Washington Coca-Cola Bottling Works*, 84 F. (2d) 261, 105 A. L. R. 1034, and annotation beginning on page 1039 of the latter volume on, "Presumption of Negligence from Foreign Substances in Food."

█ We have approved the following principles of substantive law relating to the liability of a manufacturer of foods or beverages because of the presence of a deleterious foreign substance contained therein: (1) The legal duty of exercising a high degree of care for the protection of the health of the consumer rests upon the manufacturer; (2) Where it is shown that the bottle or container with the foreign substance in it is delivered by the manufacturer, and there is no evidence that it has been tampered with subsequent to such delivery, a *prima facie* case of negligence on the part of the manufacturer is made out which puts upon it the burden of overcoming the presumption; and whether or not it has overcome such presumption by proving the exercise of a high degree of care, or has been negligent, is a question for a jury in a given case; and (3) Negligence may be established not only by positive but by circumstantial evidence when the circumstances are sufficient by fair and reasonable inference to take the case out of the realm of conjecture.

The following positive facts and circumstances answer the contentions of the defendant that the evidence does not show what caused the plaintiff's injuries or that the beverage could have caused the injuries complained of.

The fact is that something which Campbell ate or drank in the restaurant of Mrs. Johnson on the night of April 6, 1940, caused burns around his mouth, illness of his stomach, and nausea. Neither Dean nor the small child who ate similar "hot dogs," at the same time, suffered any ill effects. Campbell, who ate a "hot dog" and drank a Coca-Cola containing some ugly looking, ill smelling substance, became immediately ill. The "hot dog" and the chili sauce having been proved to be wholesome, and no other cause existing, by the process of elimination, the cause of Campbell's injuries is fastened upon the presence of the foreign substance in the Coca-Cola, which undeniably was offensive and impure.

A supporting consideration of the view that the substance in the bottle was the result of a negligent bottling process is the evidence to the effect that it (the substance) contained some of the elements of the hot caustic solution used in rinsing, sterilizing, and disinfecting the bottles before being filled with Coca-Cola.

Under the circumstances, it was for the jury, as a body of reasonable men, to determine whether the defendant was negligent in the preparation of its product and whether the foreign materials in such product caused the injuries to the plaintiff.

The defendant complains of the giving and refusing of certain instructions. The instructions, on the whole, were highly favorable to the defendant. Plaintiff's instruction number 4 might properly have been enlarged by telling the jury how a *prima facie* case of negligence might be rebutted. However, defendant's instruction number 4 sufficiently covers that omission and, in addition, almost directs a verdict for the defendant. Consequently, the refusal to give defendant's instruction number 7, which covered the same point was harmless error.

The instructions correctly told the jury the necessity for plaintiff to prove both negligence on the part of the defendant and his consequent and proximate injury thereby, the effect of contributory negligence on the part of the plain-

tiff, if any, and that they might consider whether, under the circumstances, there was any opportunity for persons other than the defendant to place the foreign substance in the bottle of Coca-Cola.

There is no merit in the assignment relating to the amount of the damages awarded by the jury. The finding of the amount of the damages was the peculiar and special province of the jury. There has been no attempt to show that the jurors were influenced by passion, prejudice, or partiality. *Aronovitch* v. *Ayres,* 169 Va. 308, 193 S. E. 524; *Fruit Growers Express Co.* v. *Hulfish,* 173 Va. 27, 3 S. E. (2d) 160.

The judgment appealed from is without error and is affirmed.

*Affirmed.*